T. B. DANIELS v. DECATUR COUNTY, Appellant.

**Interpretation of Contract:** PROVINCE OF JURY.    A county, by
written contract, employed a bridge builder.    It was agreed that
he should do all he could to aid and benefit the county "in all
work he may undertake;" and this was followed by specific
instructions as to the doing of bridge work.    He was asked to
advise on bids for bridge material, and acted.    It is claimed that
he advised completely, and that, thereupon, the board terminated
his contract.    In a suit for damages, defendant offered evidence
tending to show that both parties construed the contract to be in
force when such advice was given, and that its giving was a duty
covered by said contract.    The latter was silent as to when it
should go into operation.    *Held*, This evidence should have been
admitted, and the questions when the contract went into effect,
and how the parties construed it should have gone to the jury,
although the giving of said advice was not, technically, a duty
under said contract.

*Appeal from Lucas District Court.*—HON. T. M. FEE,
Judge.

THURSDAY, OCTOBER 22, 1896.

IN January, 1890, the defendant county, through
its board of supervisors, entered into a written con-
tract with plaintiff, whereby the plaintiff, for the period
of one year, was to act as superintendent and foreman,
and to perform the work of a bridge hand or carpen-
ter, in the building of bridges in Decatur county, and
to receive for each day necessarily so employed, the
sum of two dollars and ten cents.    He was also to pro-
vide certain teams and men, for which he was to
receive a stated compensation.    In February, 1890,
the board of supervisors notified plaintiff that his
services would not be required under the contract;

and this action was commenced in March, 1894, to recover damages for a breach of the contract on the part of the county, because of which plaintiff and his teams were thrown out of employment. The defendant, in its answer, set out the contract, and pleaded some of its provisions, and the conduct of the plaintiff, in justification of its acts in refusing the employment. The issues were tried to a jury that returned a verdict for the plaintiff, and from a judgment thereon the defendant appealed.—*Reversed.*

*C. W. Hoffman, J. H. McVay,* and *Stuart & Bartholomew* for appellant.

*Harvey & Parrish* and *J. H. Penick* for appellee.

GRANGER, J.—The following is the important part of the contract referred to: "T. B. Daniels hereby agrees to furnish all tools and machinery necessary to build and repair all county bridges in Decatur county, Iowa, and to keep said tools and machinery in good repair at his own expense; to act as superintendent and foreman; and to perform the work of a bridge hand, or carpenter, during the continuance of this contract,—for the sum of $2.10 per day for each and every day actually and necessarily employed in laboring upon, and superintending the building and repairing county bridges in Decatur county, Iowa, and agrees to furnish, when necessary, two teams, wagons, and two men, at the rate of $2.00 per day, for team and wagon and man for the time actually and necessarily employed in hauling timber, etc., etc., for Decatur county, Iowa. Permission is hereby given to the said T. B. Daniels to employ W. H. Webster, at his own expense, and when the said Webster is so employed he may act for the said T. B. Daniels, under the conditions of this contract. It is expressly

agreed that the said Daniels and Webster will use their best skill and ability in repairing and building all the county bridges; that they will do the work in a scientific and workmanlike manner, and shall complete each job as rapidly as the same can be done. The said Daniels hereby agrees to use all his power to aid and benefit the county of Decatur in all work he may undertake. It is expressly agreed that all the work shall be done under the supervision of the board of supervisors, or a member thereof, and that any time the said board of supervisors, at a regular or special meeting, decide that they are dissatisfied with the manner in which the said Daniels performs the work for the county, they may declare the contract at an end, and simply pay the said Daniels for the time actually and necessarily employed up to the date that he may have notice of their desire to declare this contract at an end." The grounds on which plaintiff's services were refused, are shown by the answer of defendant, as follows: "That after making said contract, as set up in said former answer, to-wit, on the 16th day of January, 1890, defendant called upon the said plaintiff, as its said employe, under said contract, to assist its board of supervisors in selecting and purchasing bridge materials and iron bridges for said county; that on the 11th day of February, 1890, the plaintiff, in response to said call, as such employe, met with defendant's board of supervisors, and divers merchants and manufacturers of iron bridges and bridge materials, to consider the bids that the said parties might make for the sale of such bridges and bridge materials, and to purchase the same for said county on the best possible terms, and at the lowest prices; that said members of said board were not mechanics or bridge builders, and had very little knowledge or experience in relation thereto, all of which was well known to the said plaintiff, and said board called upon said plaintiff, as

such employe of said county, under, and in pursuance of, said contract, to assist them in fully protecting the interests and rights of said county in making such selections and purchases, all of which said plaintiff assented to do, and undertook to do, under his said contract, and in performance of the terms and meaning thereof, as the same was then understood and construed by both of said parties, and the plaintiff then and there entered upon the performance of his said contract as above stated. Defendant further states that plaintiff did not perform the said work or duties in good faith towards defendant, but, on the other hand, he then and there undertook to cheat and defraud defendant in the performance thereof; that in fact he then and there fraudulently combined and confederated with said bidders to cheat and defraud defendant; that he then and there encouraged said bidders to demand higher prices for their said materials than they would ordinarily demand therefor; that he secretly and fraudulently suggested and offered to said bidders that, if they would pay him one hundred dollars, he would use his influence with said board to have said board accept any offer or bid that said parties should make to said board for the sale of said materials, and he did thus induce said bidders to demand much higher prices for their materials than they ordinarily sold the same for; that in fact, in divers ways, he, the plaintiff, secretly and fraudulently confederated with and assisted said bidders in an attempt to obtain from defendant an exorbitant and unreasonable sum or price for said materials; that, knowledge of said fraudulent acts on the part of the plaintiff coming to defendant's board of supervisors, they became, and were, by reason thereof, dissatisfied with the manner in which plaintiff performed said work or service under his contract, and so notified him thereof, and they then

and there decided that they were dissatisfied with the manner in which said plaintiff performed his work under said contract, and declared the same at an end."

The contract is silent as to when plaintiff was to commence work under it, and the parties are not agreed as to that fact; plaintiff's claim being that it was about the middle of April following, and defendant's averment is that plaintiff was there with the board of supervisors, at the time specified in the answer, as its "employe under contract." He seems to have been invited by a member of the board of supervisors, to be there and assist the board, and agreed to do so. This meeting was February 11, 1890. There is evidence that at the January meeting, and after plaintiff was employed, a member of the board requested him to be present at the time of the purchase of materials for bridges, and he said that he would be, and assist the board all that he could. Plaintiff was a bridge builder, and his employment was because of this. There is evidence, from which it appears that the plaintiff became a bidder for purchasing materials, and his being a bidder seems to have provoked other bidders, so that he was there accused of having proposed to some of the bidders, because of his employment by the county, for a consideration, to use his influence with the board in their behalf. After this, plaintiff disappeared, and was not seen further. The difficult question in the case is as to the construction of the contract. While the board of supervisors regarded this conduct as sufficient to justify it in declaring the contract at an end, appellee contends that the acts complained of are not those for which the board had such a right. The district court took this view of the case, and gave to the jury the following instruction: "(3) You are further instructed that what occurred on the 11th day of February, 1890,

at the meeting of the board of supervisors in Leon, at the time the board of supervisors was receiving bids for bridge materials, has nothing to do with this case, or the issues in this case submitted to you by the court under the pleadings; and you will not consider the evidence of the witnesses as to what was then and there said and done, as the court heretofore, on the trial, excluded said evidence." The court also excluded evidence tending to show the facts pleaded. If it be a fact that the service by the plaintiff for the board, February 11, 1890, was entirely disconnected from the service contemplated by the contract, it is likely true that the acts of plaintiff as alleged would furnish no excuse for its rescission. But if, on the other hand, the plaintiff was there in pursuance of his employment,—that is, if the board requested his assistance as its employe, and plaintiff was present as such,—then his acts were proper matters for the board to consider as a reason for rescinding the contract. The dispute as to the time when labor under the contract should commence, is such that it might be left to the jury, and whether or not the kind of service contemplated on that day was in pursuance of the contract, depends on whether or not the parties so intended. Unmistakably, the plaintiff was employed as a superintendent of bridge building. Even though the duty in question was not technically within the terms of employment, if both he and the board saw fit to treat it as such, it is not the province of the court to otherwise determine. The issues fairly present the question of the intent of the parties as to this service, and the court, in presenting the issues to the jury, stated, as an averment of the defendant: "Defendants called upon said plaintiff, as employe of said county, and in pursuance of said contract, to assist them in protecting the interests and rights of said county, and in making

such selections and purchases; and all of which said plaintiff assented to do, and undertook to do, under his said contract, and in the performance of the terms and meaning thereof." These averments were, by a denial, put in issue. If established, they would conclusively settle the question of whether or not the service was rendered under the contract. They were the parties to the contract who were acting, and it was their right to so construe it, even if, in so doing, it effected a change or modification of the terms of the contract. In the contract it is specified: "The said Daniels hereby agrees to do all in his power to aid and benefit the county of Decatur in all work he may undertake." These words are immediately followed by those of more specific application, and which seem to be all that would be essential as to the particular duties of construction. They are as follows: "It is expressly agreed that the said Daniels and Webster will use their best skill and ability in repairing and building all the county bridges; that they will do the work in a scientific and workmanlike manner, and shall complete each job as rapidly as the same can be done." It is certainly not out of reason that the parties may have construed the contract as including the work in question, and, if so, their construction should obtain. We think the court should have submitted the case to the jury on such a theory, so that if, within the understanding of the parties, the service on the eleventh day of February, was under the contract, it might be considered in determining whether or not the contract should be rescinded. In giving the instruction denying that right, and in excluding evidence tending to show such fact, the court erred. It could not well be questioned, but that if Daniels was working under his contract when the bids were taken, and he made the engagements with the bidders

as charged, the board of supervisors was justified in declaring the contract at an end.

We do not, in view of a new trial, deem it necessary to consider other questions argued. For the errors suggested the judgment will be REVERSED.