### STATE *ex rel.* COSPER v. PORTER, Sheriff, *et al.*

Const. Art. 9, § 2, provides that, where a county seat of an organized county has not been located by a majority vote, the county board shall submit such location to the electors of the county at a general election, and that the place receiving a majority of all the votes cast shall be the county seat. Laws 1890, Chap. 64, declares that, if no place shall receive a majority of votes, the question of the location of the county seat shall not be resubmitted before the expiration of four years. *Held*, that such provision was not in conflict with the constitution, and hence, where an organized county failed to select a place for its county seat by a majority vote in 1896, the selection of the county seat in 1898 was invalid.

CORSON, J., dissenting.

(Opinion filed April 3, 1900.)

Appeal from circuit court, Roberts county. Hon. A. W. CAMPBELL, Judge.

Mandamus by the state, on the relation of Hugh. R. Cosper, against John F. Porter, as sheriff, and others. From an order sustaining defendants' demurrer to the application, relator appeals. Reversed.

*Ivan W. Goodner*, for appellant.

The legislative act forbidding a second election before the expiration of four years, is constitutional; because, first, the power of the board of county commissioners, under Section 2, Art. IX, Const., was exhausted by the order of submission at the first election; second, the legislative enactment contemplates a condition of things not provided for by the constitution; and, third, the act is a reasonable regulation under the constitutional provision. Alexander v. People (Colo.) 2 Pac. 896; State *ex rel.* v. Supervisors, 24 Wis. 49; People v. Mar-

shall, 6 Ill. 672; Maxwell v. Fulton County, 119 Ind. 20; Hedderich v. State, 101 Ind. 564; People v. Gallagher, 4 Mich. 244; Sharpless v. Philadelphia, 21 Pa. St. 147; 59 Am. Dec. 759; Churchman v. Martin, 54 Ind. 380; McCrary, Elec. (4th Ed.) Sec. 130; Capen v. Foster, 12 Pick. 127; People v. Hoffman, 116 Ill. 587; Com. v. Maxwell, 27 Pa. St. 44; State *ex rel.* Comrs. Harper Co. 34 Kas. 302.

*A. B. Kittredge, D. C. Thomas, Howard Babcock* and *W. D. Lane*, for respondents.

Where a provision of the constitution is self-executing, it is not possible for the legislature to pass an effective law upon the subject. Cooley, Const. Lim. pp. 100, 101 (4th Ed.); 6 Am. & Eng. Ency. of Law, (2d Ed.) 912; Willis v. Mabon, 48 Minn. 140-148; Hill v. Chicago, 60 Ill. 86; People v. Hoge *et al.* 55 Cal. 612; State *ex rel.* v. Weston, 4 Neb. 216; 8 Am. St. note, p. 415; Matter of Keymer, 148 N. Y. 219; Newell v. People, 7 N. Y. 97.

Chapter 64, Laws 1890, is unconstitutional. Sutherland, Stat. Con. (Ed. of 1891) §§ 169-171; Warren v. Mayor, 2 Gray 84; Railroad v. Railroad, 28 Kas. 453; People v Porter, 90 N. Y. 68; Allen v. Louisiana, 103 U. S. 80; Sparhawk, v. Sparhawk, 116 Mass. 315; Reed v. Railroad, 33 Cal. 212.

HANEY, J. An elector and taxpayer of Roberts county applied to the circuit court for a writ of mandamus commanding the sheriff, treasurer, auditor, register of deeds, county judge, state's attorney, clerk of the courts, and superintendent of schools to remove their offices from Sisseton to Wilmot. Defendants' demurrers to the application were sustained, and relator appealed.

It is averred in the application that for more than 10 years last past the county seat of Roberts county has been, and still is, established at Wilmot, under and by virtue of a special act of the legislature of Dakota territory, approved March 9, 1885; that at the general election in 1896 the question of the location of the county seat was submitted to the electors under the provisions of Section 2, Art. 9, of the Constitution and that no place received a majority of all the votes cast at such election upon the question submitted; that at the general election in 1898 the question of the location was wrongfully submitted to the electors under the same section of the constitution, before the expiration of four years from the preceding election, at which such question was submitted; that at the election in 1898, 2,495 votes were cast, of which Sisseton received 1,746, Wilmot 586, and 22 were scattering; that when the 1898 vote was canvassed the county commissioners declared the county seat to be at Sisseton, directed the county offices to be removed to that place, and they were accordingly removed. Article 9 of the constitution contains the following provisions:

''Sec. 2. In counties already organized, where the county seat has not been located by a majority vote, it shall be the duty of the county board to submit the location of the county seat to the electors of said county at a general election. The place receiving a majority of all votes cast at said election shall be the county seat of said county.

Sec. 3. Whenever a majority of the legal voters of any organized county shall petition the county board to change the location of the county seat which has once been located by a majority vote specifying the place to which it is to be changed, said county board shall submit the same to the people of said

county at the next general election, and if the proposition to change the county seat be ratified by two-thirds of the votes cast at said election, then the county seat shall be changed, otherwise not. A proposition to change the location of the county seat of any organized county shall not again be submitted before the expiration of four years."

These provisions of the organic law are plain, and easily understood. In counties already organized, where the county seat had not been located by a majority vote when the constitution was adopted, to which class Roberts belongs, it became the duty of the county board to submit the location of the county seat to the electors of the county. In organized counties, where the county seat has once been located by a majority vote, a proposition to change the location can be submitted only upon the petition of a majority of the legal voters, and cannot be again submitted before the expiration of four years. The controversy in this instance is caused by a condition of affairs not contemplated or provided for in the constitution, namely, where the question has been submitted under Section 2, and no place receives a majority of all the votes cast at the election. It is clear that where a county seat has been once located by a majority vote, its location can be changed only in the manner prescribed in Section 3, and a second change cannot be attempted within four years. But what is the rule where the county seat has not been so located, and an attempt to locate it under Section 2 fails because no place receives a majority of all the votes cast? We have discovered no reason for modifying the views expressed in State v. Lien, 9 S. D. 297, 68 N. W. 748, wherein this court says: "To give to the electors of every organized county in the state whose seat of gov-

ernment had not been established by an expression of popular will at the ballot box the right to locate their county seat by a majority vote, was the clear intention of the framers of our con stitution. The provision above quoted is clearly and in all re- spects self-executing, and the public duty imposed thereby up- on the board of county commissioners continues incessantly un- til the question has been submitted in conformity with the ex- press command therein contained. Neither a petition nor a demand was contemplated by the framers of our constitution; and Section 1, Chap. 64, Laws 1890, in so far as the same re- lates to the presentment of a petition to the board of county commissioners in cases where county seats have not been lo- cated by a majority vote, is inoperative, because in conflict with the constitutional provisions under consideration. The duty imposed and sought to be enforced is of a public nature, resting wholly upon the defendants by virtue of their office, and no demand is necessary." The question of location having been submitted in obedience to the mandate of the constitution in 1896, and no place having received a majority of all the votes cast, Roberts county remained in the class of counties already organized, where the county seat had not been located by a majority vote, a result as heretofore stated, not contemplated by the constitution. The question, therefore arises whether it was competent for the legislature to provide for such a con- tingency. It attempted to do so. Chapter 64, Laws 1890, con- tains this provision: "If, upon a canvass of the vote cast as herein provided, no city or town shall have received the vote required by the constitution, the question of location of the county seat shall not again be submitted before the expiration of four years. And it is hereby made the duty of the board of

county commissioners to give notice of said election in the same manner as provided for in section one of this act, and the vote cast shall be canvassed, certified and returned as hereinbefore provided." In the absence of constitutional limitations, the powers of the legislature are plenary, and its enactments must be sustained unless they plainly and palpably conflict with the organic law In counties situated as Roberts was, the constitution requires that the question of location shall be submitted at a general election, and it expressly declares what the result shall be when any place receives a majority of all the votes cast, but it is silent as to what shall be done when no place receives such majority. There is, therefore, no reason why the legislature should not provide the method of procedure when circumstances arise not contemplated by the constitution. We think there is no conflict between the constitution and the statute, so far as the latter prohibits a resubmission within four years, and that the validity of this restriction is not affected by the fact that so much of the act as requires a petition to secure a submission in the first instance has been declared and is now held to be unconstitutional. In State v. Lien, *supra*, the duty of the county board was considered with reference to a first submission, and the language there employed does not conflict with the views now expressed, when taken in connection with the conditions presented by this appeal. If the averments of the application in this proceeding are true, the question of location was submitted at the election of 1898, in direct contravention of the statute. All the proceedings in relation to such submission, and the vote thereon, were void, and of no effect; and the county seat remained at Wilmot, to which place defendants should be compelled to return the records, files, and other

property pertaining to their several offices. The order of the circuit court is reversed, and the cause remanded for further proceedings not inconsistent with this opinion.

CORSON, J., dissents.