## STATE *ex rel.* COSPER v. PORTER, *Sheriff, et al.*

1.  In mandamus to compel the officers of a county to return their offices to the county seat after the election to change the county seat, and pursuant to which the offices were moved, has been adjudged invalid, the fact that the offices were ordered to be so moved by the commissioners constitutes no defense.

2.  Where, in an action to compel the officers of the county to return their offices to the county seat, after they had been moved pursuant to a void election, an allegation in the answer that suitable rooms and vaults could not be obtained there is not sustained, where the evidence discloses no substantial change in the condition at the county seat, where the offices were situated for ten years before the removal.

3.  The fact that the county neither owns nor controls a suitable building at the county seat is no defense to an action to compel the county officers to hold their offices there, since it is the duty of the commissioners to procure suitable rooms, and, if they do not do so voluntarily, the officers can compel them to.

4.  While the statutes do not expressly require every officer of the county to maintain an office at the county seat, the law clearly contemplates that, to the extent that any officer is required to maintain an office, it shall be at the county seat.

Corson J., dissenting.

(Opinion filed March 1, 1902.)

Appeal from circuit court, Roberts county. Hon. A. W. CAMPBELL, Judge.

Mandamus by the state of South Dakota, on the relation of Hugh R. Cosper, against J. F. Porter, as sheriff of the county of Roberts, and others. From a judgment for plaintiff, defendants appeal. Affirmed.

*D. C. Thomas, W. D. Lane, Howard Babcock, A. B. Kittredge,* for appellants.

The county commissioners should have been made parties to this proceeding, City of Bangor v. County Commissioners, 32 At. 903.

Mandamus will not lie to compel the performance by an officer of an act beyond the powers with which his office is invested by law. It is not the office of mandamus to create powers but simply to compel the exercise of those powers already granted. United States v. Lobett Co., 7 Fed. 318; State v. Simpsons, 16 Wis. 613; City of Benton Harbor v. St. Joseph, 60 N. W. 758; Railroad v. People, 120 Ill. 200; High on Extraordinary Legal Remedies, (3rd. Ed), Sec. 32; Port Huron v. Jenkinson, 6 L. R. A. 54-56; Turnbull v. Giddings, 19 L. R. A. 853; Gruner v. Moore, 6 Colo; Collier v. Henderson, 32 Pac. 417; Miller v. State, 22 Pac. 326; Congregation of Mission of St. Vincent v. Street and Sewer committee, 27 At. 799; Waterworks v. Reed, 15 At. 10; Fuller v. Brown, 30 S. W. 506; State v. Archibald, 43 Minn. 328; Savanah v. Sherman, 91 Ga. 400.

*Ivan W. Goodner,* for respondent.

HANEY, P. J. The question of the location of the county seat was voted upon by the electors of Roberts county at the general election of 1898. The vote having been canvassed, and result declared, the county offices, records, etc., were removed to the town of Sisseton. In January, 1898, this proceeding was instituted to compel the defendants to return their respective offices to Wilmot, it being claimed that the election was void. Defendants' demurrers to the application for a peremptory writ of mandamus were sustained, and the relator appealed. The order of the circuit court having been reversed, and the proceeding remanded, defendants answered, denying certain averments of the application, and alleging, in substance, that the county offices were removed to Sisseton by order of the county commissioners, where suitable buildings had been provided; that the county neither owned nor controlled any suitable buildings at Wilmot; that suitable rooms and vaults could not be obtained at Wilmot; and that the commissioners, after due demand,

had neglected and refused to make any provision for keeping the county offices at the latter place.

This court said on the former appeal: "If the averments of the application in this proceeding are true, the question of location was submitted at the election of 1898, in direct contravention of the statute. All the proceedings in relation to such submission, and the vote thereon, were void, and of no effect; and the county seat remained at Wilmot, to which place the defendants should be compelled to return the records, files, and other property pertaining to their several offices." State v. Porter, 13 S. D. 126, 82 N. W. 415. The court below having found the facts to be as averred in the application, and its findings being supported by the evidence, the question arises whether there was any allegation of the answer established by competent evidence which avoids the effect of such facts.

If the election of 1898 did not result in the removal of the county seat to Sisseton, it remained at Wilmot, and its location could not be changed by an order of the commissioners directing a removal of the public records. This must be so; otherwise the commissioners would be clothed with power to overrule the decisions of this court. Therefore the fact that the offices were removed by direction of the commissioners constitutes no defense in this proceeding. It will certainly be conceded that county commissioners cannot change the *de jure* county seat by merely providing public buildings at another location. The allegation that suitable rooms and vaults could not be obtained at Wilmot is not sustained by the evidence. Indeed, the averment is unreasonable, in view of other undisputed facts. The county seat had been at Wilmot for more than ten years preceding its removal to Sisseton, and no substantial change in the conditions existing in that town during that period is disclosed by

the record. Nor is the allegation that the county neither owned nor controlled a suitable building in Wilmot material. If that place was the county seat, it was the duty of the board to lease, purchase, or construct such office buildings as would meet the immediate demands of the public business. We have no doubt this might have been done without serious expense at the time this proceeding was tried in the court below. It is extremely doubtful if the evidence sustains the allegation that the commissioners, after due demand, neglected and refused to provide for the county offices at Wilmot. The demand was not acted upon either formally or officially, and, in the light of all the evidence, it does not appear to have been made in good faith. In any event, no facts were shown in this connection constituting a defense in this proceeding. It should be presumed that all public officers will properly perform their official duties. It could not have been assumed by the trial court that, because the commissioners had refused to provide offices at Wilmot after the decision of this court on the former appeal, they would still refuse such a demand after the litigation had resulted in a final judgment. This court will presume that, had the judgment of the circuit court not been appealed from, the commissioners would have made adequate provision for conducting the public business at the place adjudged to be the county seat. Had they neglected or refused to perform such duty, either of the defendants might have compelled its performance.

The contention that certain of the defendants are not required by law to maintain offices at the county seat is untenable. The law of this case was otherwise determined upon the former appeal, though attention was not especially directed to the particular duties of each county officer. And, though the statutes may not expressly require each of the defendants to maintain an office at the

county seat there is clearly an implied obligation resting upon all county officers to recognize its legal location and to there transact the public business, so far as the nature of such business will permit. To the extent that either of the defendants is required to maintain an office, the law clearly contemplates that he shall maintain it at the county seat. Again, all the defendants throughout this entire litigation have resisted the contention that Wilmot retained the county seat notwithstanding the 1898 election. For these reasons, without attempting to accurately define the duty of any county officer with respect to the time he should spend at the county seat, we think the judgment should be affirmed as to all of the defendants. It is so ordered.

CORSON, J., dissents.