State v. N. Mexican P. Co., 25 N. M. 102.

(No. 2202.   Dec. 31, 1918.)

STATE v. NEW MEXICAN PRINTING CO. et al.

### SYLLABUS BY THE COURT.

1.   Rule stated as to when a newspaper publication constitutes a contempt of court.                               P. 107

2.  · A constructive contempt proceeding, being criminal in its nature, is governed by the rules of criminal law.     P. 108

3.   A newspaper publication not contemptuous per se will not be considered as contemptuous unless shown affirmatively so to be by innuendo.                               P. 108

4.   In proceeding for constructive contempt, in considering the probable effect of the article alleged to be contemptuous, every fair and reasonable inference consistent with the theory of defendant's innocence will be indulged.     P. 108

Appeal   from   District   Court,   Valencia   County; Mechem, Judge.

Information for contempt by the State of New Mexico against the New Mexican Printing Company, a corporation, and others. . Motion to quash the information and · rule to show cause denied, and judgment against one of the individual defendants sentencing him to a jail term, and he appeals.   Cause remanded, with instructions to dismiss the information and to discharge the defendant.

E. R. WRIGHT and F. C. WILSON, both of Santa Fe, and H. D. MASON, of Tulsa, Okla., for appellant.

H. L. PATTON, Atty. Gen., and C. A. HATCH, Assistant Atty. Gen., for the State.

### OPINION OF THE COURT.

HOLLOMAN, District Judge.   On the 9th day of August, 1917, there was filed in the office of the clerk of the district court for Socorro county an information charging the appellant with contempt of court.   The information was filed by the district attorney of that court. The information sets out that on the 30th day of March,

1917, there was then pending in that court for adjudication and determination two causes, one being No. 2037 on the civil docket, wherein Henry Dreyfus was plaintiff and the New Mexican Printing Company and others were defendants; the other being cause No. 1031 on the criminal docket of the court, wherein the state of New Mexico was plaintiff and Bronson M. Cutting and E. Dana Johnson were defendants, on indictment for criminal libel. The information further sets out that at said time there was published in the city of Santa Fe a certain daily newspaper known as the ''Santa Fe New Mexican,'' of general circulation throughout the state of New Mexico, of which said paper on said day the New Mexican Printing Company, a corporation, was the owner and publisher, the said E. Dana Johnson was the managing editor, and the said Bronson M. Cutting was the president of the said New Mexican Printing Company and in full control of the policy of said newspaper. The information further sets out that on the 30th day of March, 1917, there was published in said newspaper a certain article, the parts set forth in said information and considered as contemptuous being as follows:

''The filing of an affidavit by Judge Merrit C. Mechem, of the Seventh judicial district, not in his judicial capacity, but as a private individual, seeking to exonerate Attorney M. C. Spicer of the charge of secretly signaling to witness and plaintiff Henry Dreyfus, during the trial of his alleged libel suit against the New Mexican at Los Lunas, makes proper and necessary the publication by this newspaper of many details of the conduct of the Dreyfus case hitherto unpublished, and especially relating to the presiding judge.

''The New Mexican, since the returning of indictments by the Socorro county grand jury against the newspaper, has never been under any delusions as to what it was up against in the campaign of H. O. Bursum, absolute political dictator of Socorro county, to 'put the New Mexican out of business.'

''The New Mexican has never been under any misapprehensions as to what would happen either in Socorro or Valencia county; the former under the sway of Mr. Bursum's political organization, the latter as completely under the sway of the allied Otero political organization, and a county which for decades has been famous for the fact that a

Democratic vote on election day was always about as scarce as the dodo. Socorro and Valencia counties for many years have been the two strongest strongholds of the old territorial Republican machine. It was in a Valencia county precinct that the celebrated alphabetical voting took place, and it was from Valencia county, in answer to the Republican query, 'How many votes have you?' that the answer came back, while the returns were still pending, "How many do you need?"

"To start with, the reader is asked to bear in mind the fact, a matter of general knowledge for many years, that those two counties are as completely under the political sway of H. O. Bursum and the political associates of the late Don Solomon Luna, who rules Valencia like a king, as Bernalillo county years ago was under the absolute despotism of Frank A. Hubbell. In those two counties this combination is virtually the arbiter as to who shall be named for public office. In Socorro county, Bursum is czar; men nominated by the Republicans must have the O. K. of the boss, tacit or expressed; where you find a Republican office holder you find a Bursum man, by choice or necessity. Especially in the town of Socorro is the Big Boss supreme; he has been mayor there for years, as the conditions of the town attest; Henry Dreyfus, the city marshal, is absolutely typical of the class of men selected by Bursum as his lieutenants; the methods followed in county affairs, which have been completely aired by this newspaper, are typical of Bursum.

## MECHEM STRONG BURSUM MAN.

"Judge M. C. Mechem of the Seventh district is and has been a strong supporter of H. O. Bursum. He contributed heavily to the Bursum campaign fund at the last election; he is a business associate of H. O. Bursum; a strong personal friend of Bursum, closely indentified with the Bursum political faction, and became judge largely through the Bursum influence. All of which, of course, is the privilege of Judge M. C. Mechem and his personal right. The New Mexican specifically sets forth Judge Mechem's political affiliations merely for the purpose of informing the people of the state who may be uninformed. This is not an attack upon the politics of Judge Mechem, but the statement of pertinent facts which for many reasons the public should know.

## THE MECHEM AFFIDAVIT.

"The New Mexican has realized from the beginning of the Bursum libel suit that it must try its case before the people.

"Despite that knowledge, as a review of the case shows, out of a scrupulous respect for the court it has consistently suppressed various details of the proceedings, several times at the particular request of the presiding judge, and to prevent any notoriety for the court which might be undesirable or unpleasant."

The information further alleges that on the said 30th day of March, 1917, the said New Mexican Printing Company, the said Bronson M. Cutting, and the said E. Dana Johnson caused to be printed and published the said newspaper containing the foregoing article, and caused the same to be circulated and given general publicity in all of the counties composing the Seventh judicial district of the state of New Mexico, of and concerning said causes so pending in this court, and of and concerning this court and its supposed action with reference to said causes.

The information further alleges that the printing, publishing, and circulation of the aforesaid matters in said newspaper as aforesaid was and is a contempt of court, in this: That said publication attacked the integrity of the court, generally and particularly in relation to said pending causes; that said publication tended to embarrass the due administration of justice in said pending cases, and that the evident purpose and intent of said publication was to influence public opinion against the court and to bring the court into contempt and disrepute; that said publication was so made for the purpose of influencing, intimidating, and coercing the court in its determination of the issues in said pending causes.

Upon the filing of said information an order was issued, directed to the defendants, requiring them to appear to answer said information on oath, and to show cause why they should not be punished for contempt.

The defendants appeared and filed a motion to quash the information and rule to show cause. The motion to quash is very voluminous and not necessary to set out herein.

The motion was by the court overruled, and subsequently the defendants filed their answer, in which

among other things, they denied the pendency of the causes alleged in the information. They admitted the publication of the newspaper as set forth in the information; they admitted that the New Mexican Printing Company, a corporation, was the owner and publisher of said newspaper; they admitted Bronson M. Cutting was the president; but they denied that the said Cutting was in full or other control of the policy of the said newspaper, but alleged that the management of the policy and control of said newspaper was vested in the board of directors of the New Mexican Printing Company, the owner of said newspaper, and not otherwise; they alleged that the alleged newspaper article as set forth in the information, was inaccurate and incomplete; they denied that Bronson M. Cutting or E. Dana Johnson, or either of them, caused the said newspaper to be printed or published or to be circulated in any of the counties of the Seventh judicial district or elsewhere, and alleged that said newspaper articles were not printed, published, or circulated of or concerning said court or judge, and it or his supposed action with reference to said causes or either of them. They further allege that said articles, and each of them, were printed, published, and circulated without any intent, purpose, or design on the part of the defendants, or any of them, to attack the integrity of the said court or judge, either generally or in relation to either of said alleged pending causes, and without purpose, intent, or design to influence public opinion against the said court or the judge thereof, or to bring it or him into contempt or disrepute, and without purpose, intent, or design to influence, intimidate, or coerce the said court, or the said judge, in its or his determination of any of the issues in either of said alleged pending cases, and without purpose, intent, or design to prevent fair or impartial action by the said court or judge in either of the said causes, and without purpose, intent, or design to reflect upon the said judge or court, or others interested in any pending cause or respecting the same, and without purpose, intent, or design to corrupt or embarrass the due administration of justice by said court

or judge; and they allege that neither of said articles was calculated to have, or did have, any such effects or results. Many other things were set forth in the defendants' answer which it is unnecessary to consider.

No denial of the answer was filed by the state.

The action was called for trial, and the only evidence introduced was certain record evidence to show that the causes mentioned in the information were pending causes at the time of the alleged contemptuous publication. The defendants moved for a judgment, which was overuled, and elected to stand on the motion without introducing any evidence. Judgment was rendered against appellant, and he was sentenced to serve a term of 30 days in the county jail, from which judgment this appeal is prosecuted.

[1] Authorities are practically unanimous that any publication calculated to intimidate, influence, impede, embarrass, or obstruct courts in the due administration of justice in matters pending before them constitutes a contempt of court. It is further frequently stated that any willful act or conduct or any publication which has a tendency to prevent a fair trial, or tends to prejudice the public or jurors against an accused person for an offense, or tends to prejudice the rights of either party to a civil action, may be punished as for contempt of court. Herald-Republican Pub. Co. et al. v. Lewis, District Judge, 42 Utah, 188, 129, Pac. 624, and cases cited.

In 2 Bishop on Criminal Law (7th Ed.) § 259, it is said:

"Again, acording to the general doctrine, any publication, whether by parties or strangers, relating to a cause in court, tending to prejudice the public as to its merits and to corrupt the administration of justice, * * * may be visited as a contempt."

In the Supreme Court of Wisconsin, in the case of State v. Circuit Court, 97 Wis. 1, 72 N. W. 193, and 38 L. R. A. 554, 65 Am. St. Rep. 90, it is said:

"A criminal contempt at common law may be generally defined as any act which tends to obstruct the course of justice or to prejudice the trial in any action or proceeding then pending in court."

In the case of Cheadle v. State, 110 Ind. 309, 11 N. E. 430, 59 Am. Rep. 199, the Supreme Court of Indiana said:

"It may be said, generally, that any willful act done to obstruct, interrupt, or embarrass the proceedings of a court, or to corrupt or impede the due administration of justice, is a contempt of the authority of the court against which such willful act is directed."

In the case of State v. Edwards, 15 S. D. 385, 89 N. W. 1012, in speaking of what constitutes constructive contempt, the Supreme Court said:

"Only such publications as are calculated to influence, intimidate, impede, embarrass, or obstruct courts in the due administration of justice in matters pending before them constitute indirect constructive contempts."

[2] This is a case charging constructive contempt, and is a criminal proceeding, and the information, the authority of the court, the weight of the evidence (including all presumptions and proof), and the regulation of the proceedings are governed by the rules of criminal law. The information must be strictly construed, as well as the article alleged to be contemptuous, and the question in this case is whether, construing the article strictly as is necessary in a criminal action, its purpose ,tendency, or effect was to embarrass, interfere with, impede, or obstruct the regular orderly administration of the law and justice in reference to the two cases, or either of them, alleged in the information to have been pending at the time the article was published.

[3, 4] There is no attempt, by innuendo or otherwise, in the allegations, to explain or connect up the alleged contemptuous article with the court, or with either of the cases alleged as pending; therefore it will be necessary to look to the article itself to see if it was of such character as would likely or would be calculated to prejudice or prevent a fair and impartial trial in either of the causes then pending.

It is apparent that the theory of the information is that the publication was contemptuous per se, in that it was calculated to interfere with the due administration of justice in either or both of the causes alleged to have been pending.

Construing this article strictly, as is required in this sort of an action, can it be said that it was contemptuous per se, and that it was calculated to interfere with the due administration of justice in either of such cases?

In this case necessarily the state is limited by the allegations of the information.

To the information is attached what purports to be a report of amici curiæ who, at the request of the court, had made the report regarding the article alleged to have been contemptuous. This is not made a part of the information, by reference or otherwise, and it is doubtful if it could be. It has no proper place in the record and cannot be considered by the court for any purpose.

It appears that the article set forth in the information is only a part of the article as published, the entire article being set out in the answer. That, however, is immaterial, as the state is limited to that part of the article set up in the information, regardless of what apears in the entire article. The defendant in his answer denies that the article as set up in the information, was as published, and points out the alleged discrepancies. However, we are not concerned with what was really published except as it bears upon the proof of the charge, but are limited in our investigation to what is alleged to have been published as set forth in the information. If it is not shown by the evidence that the article as set out in the information was a true copy of the published article, it is a failure of proof. If it is set out as it was published, then it is necessary to investigate as to whether the article is contemptuous.

In considering this question whether or not the article is contemptuous per se, we must do so in connection with the defendant's answer; for the reason that in the answer, it is denied that the publication, as set out in the information, was accurate. In the answer the defendants purport to set forth the entire article as published, and the article as set forth in the answer is admitted by the state to be correct.

"As this is a criminal proceeding, in considering the probable effect of the publication every fair and reasonable inference consistent with the theory of defendant's innocence shoud be indulged." State v. Edwards, 15 S. D. 383, 89 N. W. 1011.

The above quotation is merely declaratory of a primary principle of criminal law, and necessarily is applicable to the case at bar. Applying the above principle to the article as set out in .the information, was it contemptuous per se?

The only reference to either of the cases alleged to have been pending is in the first paragraph of the article. This paragraph referred to the Dreyfus Case, and is as follows:

"The filing of an affidavit by Judge Merrit C. Mechem, of the Seventh judicial district, not in his judicial capacity, but as a private individual, seeking to exonerate Attorney M. C. Spicer of the charge of secretly signaling to witness and plaintiff, Henry Dreyfus, during the trial of his alleged libel suit against the New Mexican at Los Lunas, makes proper and necessary the publication by this newspaper of many details of the conduct of the Dreyfus case hitherto unpublished, and especially relating to the presiding judge."

While that paragraph says that the filing of the affidavit by Judge Mechem made it necessary and proper to publish certain details, yet nowhere in the article is there an attempt to set out a single detail of that trial.

The second paragraph refers to an indictment against "this newspaper," but makes no reference to any indictment against the defendant. Further, the second paragraph in no way refers to the cases pending or to the

judge, but merely recites that, after the happening of a certain event, ''this newspaper has never been under any delusions as to what it was up against in the campaign of H. O. Bursum.'' It is impossible to construe this paragraph as a reflection in any way upon the court, but it must be construed as a statement relating to an existing controversy between the newspaper and H. O. Bursum.

The next two paragraphs merely contain a caustic criticism of alleged political conditions in certain parts of the state of New Mexico, but in no way do they refer to the court or the causes pending.

The next paragraph refers to Judge Mechem as being a strong supporter of H. O. Bursum. It alleges that he contributed to Bursum's campaign fund, is a business associate, strong personal friend, etc. We fail to see wherein it can be seriously contended that because a judge is alleged to be a strong supporter, personal friend, etc., of a certain candidate for office, that he is thereby held up to ridicule or contempt or that his honor is in any way questioned. Doubtless the learned judge would himself repel the suggestion that any odium attached because he was charged with being the personal friend, etc., of H. O. Bursum. Certainly, applying the rules of criminal law to this case, this court cannot presume that such statement is contemptuous per se.

The only remaining portion of the article that could possibly be held as contemptuous is the following:

"The New Mexican has realized from the beginning of the Bursum libel suit that it must try its case before the people."

This paragraph cannot be considered by us for two reasons: In the first place it refers to ''the Bursum libel suit,'' and not to either of the cases alleged to have been pending. So far as we know, there never may have been a Bursum libel suit against the New Mexican; at least there is no showing that such was the case, and the state

is limited by the information. In any event, we could not conclude as a matter of law that this reference to this suit, if it were pending, would tend to obstruct the orderly course of justice in the cases alleged to have been pending.

In the second place, it is shown by the defendant's answer that this particular paragraph was not contained in the article as published. This is admitted by the state; hence it can form no basis for the charge of contempt.

We have considered the paragraphs separately, but, were we to consider them as one article, still we are forced to conclude that the article is an attack upon alleged political conditions rather than an attack upon the court. The only reference to the judge is in his individual capacity, and, if in his individual capacity a judge is criticized or libeled, his recourse is the same as that afforded any private citizen, unless it is shown and proved that the libel tended to obstruct the ordinary course of justice in some pending case or that it tended to embarrass the judge in the discharge of judicial functions in future matters.

The power given the court to punish for indirect contempt is not, as generally considered by the layman, and too often by the profession, to be used as a means of personal protection not accorded to other officials. It is not the personal dignity, not the personal feelings, of the court that call into operation this arbitrary power. Attacks upon the character of a judge as an individual may be so persistent and so outrageous as to amount to a contempt, but is only when the attack upon the judge as an individual will tend to influence, intimidate, or embarrass him to such an extent as to obstruct the due administration of justice. Undue praise or fulsome flattery may have the same effect, and under some circumstances might amount to contempt, the same as unwarranted criticism. It is not the judge as an individual who is protected by

this right to punish, but it is the party litigant who is to be protected, and, until the publications complained of reach the point where they naturally tend to or do interfere with some pending matter, they are not contemptuous, no matter how vicious or unwarranted they may be.

Under our theory of government the right of the freedom of speech and of the press are essential to public welfare, and, while the freedom of the press does not mean the license to indulge in malicious, false, or unwarranted attacks, yet the force of public opinion has greatly restrained the courts in the exercise of the power to punish for making disrespectful or injurious remarks. Very often, under the guise of a guaranty of freedom, the press indulges in false and unwarranted criticism; but when this criticism is directed at a judge his remedy is the same as that given to a private citizen, unless, as we have said, it encroaches on the right of a litigant, and tends to obstruct justice in some matter pending, or that may embarrass the judge in discharging his judicial functions in future cases. Cheadle v. State, 110 Ind. 301, 11 N. E. 426, 59 Am. Rep. 199; Herald Republican Pub. Co. v. Lewis, 42 Utah, 188, 129 Pac. 624.

In a proceeding for indirect contempt, consisting of a publication in a newspaper, if the article is not contemptuous per se, and it does not appear, unless aided by innuendo, to tend to obstruct justice, and no innuendo is pleaded, and the defendant in a sworn answer specifically denies any intent to use the language in a libelous manner or to reflect upon the honesty of purpose of the judge, or to embarrass or impede the administration of justice, such answer will be taken as conclusive and the defendant discharged. Percival v. State, 45 Neb. 741, 64 N. W. 221, 50 Am. St. Rep. 568; Fishback v. State, 131 Ind. 304, 30 N. E. 1088; Cheadle v. State, supra.

Many other matters are raised by appellant in his brief, but it is only necesary for us to consider one other phase of this action. As above stated, this is a criminal case,

and is governed by the rules of criminal procedure. The defendant is presumed to be innocent until proved guilty beyond a reasonable doubt, the same as a defendant in any criminal case. There are no presumptions taken against him, but the presumptions are all in his favor. It is true he filed an answer to the charges and some parts of the information are admitted to be true. Only those parts which are admitted to be true can be taken as proved against him. Herald-Republican Pub. Co. v. Lewis, supra.

In this case it is alleged in the information that said ''Bronson M. Cutting and said E. Dana Johnson caused to be printed and published said above-named newspaper containing the foregoing article and caused the same to be circulated and given general publicity, etc.'' This allegation is specifically denied by the appellant. No evidence whatever was introduced by the state to establish that allegation; consequently it must be taken as not proved. It is true that in his answer the defendant admitted that he was the managing editor of the said newspaper, but in the face of his sworn denial that he caused to be printed, published, or circulated the newspaper containing the article complained of, certainly this court canot take judicial notice of the duties and responsibilities of a managing editor, and say that in the face of his sworn denial it must be assumed as a fact that he was responsible for the printing, publication, and circulation of the newspaper. The charge that the defendant caused to be printed and published the newspaper containing the said article is one of the material allegations of the information, and that allegation must be proved beyond a reasonable doubt, and the failure of proof of such allegation was an entire failure of evidence to sustain a conviction of the charge.

For the reasons above stated, the cause should be reversed.

It is therefore ordered that the cause be remanded,

with instructions to dismiss the information and to discharge the defendant.

HANNA, C. J., concurs.

### CONCURRING OPINION.

PARKER, J. (concurring). I concur in the result reached by a majority of the court for the reason that the information filed is insufficient to support the proceeding. It is for the protection of the public in the due administration of justice that contempt proceedings are devised and authorized. In this case, however, the information fails to allege certain necessary facts in order to make the publications complained of contemptuous per se. After stating Judge Mechem's relations, personal, business, and political, with Mr. Bursum, it states: "The New Mexican has realized from the beginning of the Bursum libel suit campaign that it must try its case before the people." But the information does not state, by way of innuendo or otherwise, that "meaning thereby to refer to Judge Mechem as a political judge in whose court defendants could not secure justice on account of the political domination of Mr. Bursum." Doubtless this is what it may be inferred the publication was intended to communicate to the public. The fact remains, however, that it is not so alleged.

In this connection it is to be remembered, as pointed out in the majority opinion, that this is a proceeding for a criminal contempt, and that many, if not most, of the attributes of criminal proceedings inhere in the same. Thus it is said that such proceedings as these should conform as nearly as posible to proceeding in criminal cases, the evidence must be sufficient to establish guilt beyond a reasonable doubt, and the accused should be bodily present in court at the time of the sentence. The respondent is not obliged to incriminate himself, and the rule against the conviction on the sole testimony of an accomplice applies. On the other hand, the proceeding differs from a strictly criminal proceeding in some particulars. The

defense of double jeopardy is not available and the respondent is not entitled to a formal trial. See 6 R. C. L. tit. "Contempt," § 43. Another feature of the proceeding may be illustrated by suggesting that courts, possessing no criminal jurisdiction whatever, such as chancery and probate courts, still have all of the powers to punish for contempt that other courts possessing general criminal jurisdiction have. The proceeding is not strictly a criminal proceeding nor a civil proceeding, but is sui generis.

So far as the guaranties usually attending a person charged with the crime are concerned, however, the proceeding is essentially in its nature a criminal proceeding, and the respondent is surrounded by most of these safeguards. I see no reason, therefore, why those guaranties should not be extended to a respondent in a contempt proceeding such as this, in regard to all of the essential features involved. There is no reason why the rules of pleading should be relaxed so that the complaint or information should be substantially less accurate or technical than an indictment. The consequences of conviction are highly penal in character, and the charge should be substantially, if not technically, certain and exact.

It may be admited that any ordinary person reading the articles which appeared in the newspaper could not but be impressed with the idea that there was a more or less deliberate attempt on the part of the publishers to convey the idea that Judge Mechem was dominated by personal and political influences, so that justice could not be obtained in his court by persons opposing those influences. But it remains, however, the fact that it is not so alleged in the complaint or information, and such a conclusion can only be drawn by inference, which might vary according to the mental attitude of the reader. There is no absolutely certain and unequivocal deduction from the publication which can be drawn. It could hardly be contended that the publications could be made the subject of a civil or criminal libel suit without the innuendo suggested.

Innumerable authorities have been examined in this connection, and, while there is some divergence of opinion as to the strictness with which complaints or informations should be viewed, I believe that the general consensus of opinion of the courts is that the information must and ought to be explicit and certain, and, if the article requires interpretation, the proper interpretation thereof should be set out by way of innuendo.

For these reasons I agree in the result.