158 So.2d 116

Earnest BOYD

v.

STATE,

Bowman Transportation, Inc., Intervenor.

6 Div. 878.

Court of Appeals of Alabama.

May 4, 1962.

Rehearing Denied Oct. 9, 1963.

Hawkins & Rhea, Gadsden, and Corretti & Newson, Birmingham, for appellant and petitioner.

Bishop & Morris, Birmingham, for Bowman Transportation, Inc., intervenor.

PER CURIAM.

The proceedings in this court originally came to this court by way of an appeal from an order of Hon. J. Edgar Bowron denying the appellant relief in a habeas corpus proceeding.

At the time of the submission of the appeal in this court, the appellant also filed in this court an original petition for a writ of habeas corpus which in effect sought to lower the amount of bond required of petitioner by the court below.

It appears from the record before us that this appellant, and the other members of Local 612, International Brotherhood of Teamsters, etc., an Unincorporated Association, called a strike against Bowman Transportation, Inc., a Corporation, on 4 November 1961.

On 1 December 1961, the Hon. Robert Giles, a judge of the Circuit Court of Jefferson County, issued an injunction by consent, said injunction restraining both Local 612, and a number of its members, and Bowman Transportation, and certain of its officials and employees from violent acts.

Thereafter, both the Local 612 and its members, and Bowman Transportation, Inc., and certain of its officials and employees petitioned the Circuit Court for contempt citations allegedly for the breach of the injunction theretofore issued by said court.

Upon the hearing of the contempt proceedings, Judge Giles issued his decree on the merits in the contempt proceedings, portions of said decree pertinent to this review being as follows:

"There have been approximately thirty parties, a great number of charges and counter charges, many related complications from simultaneous cases in other courts, a hearing within a hearing, and the recurring problem of federal pre-emption as against state police power.

"The hearing has lasted almost ten weeks unremittedly, the proof of conspiracy being largely circumstantial and therefore minutely detailed, and the charges ranging over this State from Cherokee County in the northeast to Mobile. Counsel have worked most ably and diligently in detailed

presentation, and the gravity of the case well justifies the time required.

"This injunction was granted by consent on December 1, 1961, at 12:18 p. m. It restrained both sides of the main case mutually from violence. Teamster Local 612 had opened this physical warfare by mass violence before the entrance to the Gadsden terminal on the first day of the strike to-wit: November 4, 1961.

"And immediately following grant of the injunction, such violence continued not one whit abated, and even into the closing days of this hearing, and may well be continuing even as this decree is being drafted.

"A concerted and conspiratorial program of terror has been conducted upon the public highways of this State. Very deadly weapons such as military rifles and sawed-off shot guns have been utilized, and brutal personal assaults perpetrated. The threats, blockage of access to streets, destruction of property, and mass violent intimidations pale almost into insignificance in comparison to the guerilla-type attacks with the actual weapons of war and assassination.

"No citizen who believes this State is, or should be, a place where law and order are to be respected and enforced, could read this record without astonishment and grave dismay. Certainly this Court cannot call to mind such a case ever in this State, nor elsewhere in recent years.

"The charges and evidence disclose many acts which might be serious felonies and misdemeanors. Such matters are not for this Court to deal with as such in this equity (civil) proceeding, but are for the prosecution officers, juries grand and petit, and Courts of the respective counties where venue may be laid.

"Though a most solemn writ running in the name and by authority of the State of Alabama has been outrageously flouted, this is not a criminal proceeding. In the opinion of the Court, it is primarily to conserve the rights of a lawful business from continuing and irreparable damage, and not to simply vindicate judicial authority or court process. It is remedial, prospective, and preventive in nature, primarily, and punitive only incidentally and secondarily.

"Time and space do not permit detailed recital of these outrages and complainant-cross-respondent is not altogether blameless in the matter.

\*   \*   \*   \*   \*   \*

"And it is ORDERED, DIRECTED and DECREED by the Court that all said respondents join as principals, with good and sufficient sureties or surety, to be taken and approved by the Register, in executing and filing with the Register a proper bond payable to the Register in the principal sum of two hundred thousand dollars ($200,000.-00) conditioned upon their strict compliance with the performance of the terms of said writ and of this decree.

"And complainant, any of its officers, agents, employees, contractors, or other person injured and damaged by any of said respondents since the said December 1, 1961, may sue thereon, if such be proximately caused by violation of said writ, and so may any such person so injured in the future pending rendition of the final decree in this cause.

"And cross-respondent Bowman Transportation, Inc., its President and alter ego, Ralph M. Bowman, and its agents and employees Joseph Tucker, Fleming Robinson, Woodrow Braswell and Dick Harlan Rice, and all these named individuals, individually, acting in concert with each other and with other persons unknown, did violate the prohibitions of said writ, or condone or encourage counsel, aid or assist in its violation, to the damage of cross-complainants, and are jointly and severally adjudged in civil contempt.

"And it is ORDERED, DIRECTED and DECREED that they shall join as principals in a good and sufficient surety bond similar to the one hereinabove first prescribed, with the same conditions, but in the amount of fifty thousand dollars ($50,000.-00).

"Unless such parties cause said respective bonds to be filed, taken and approved not later than 4:00 p. m. April 2, 1962, any and all parties so defaulting shall stand committed on that day and hour to the custody of the Sheriff of Jefferson County, Alabama, to be by him safely kept until the giving of such securities. And the Register shall at that day and hour issue writs or warrants of commitment to the Sheriff in such behalf, pending execution and filing of said bonds, said parties are prohibited from leaving and required to remain within the State of Alabama."

Bowman and its officers and employees posted the required bond. The appellant and other members of Local 612, failed to post the bond required of them and were committed to jail on 2 April 1962, pursuant to the provisions of the decree.

Thereafter this appellant, on 4 April 1962, petitioned the Hon. J. Edgar Bowron, Presiding Circuit Judge of the 10th Judicial Circuit, for the issuance of a writ of habeas corpus asserting in said petition that this appellant together with the other 22 respondents, did not possess the financial means or ability or credit to comply with the decree of Judge Giles, and had been and were unable to purge themselves of contempt by posting a bond in the required amount of $200,000.00. Judge Bowron issued a writ of habeas corpus, returnable at 2 P.M., on 4 April 1962, directing the sheriff of Jefferson County to have the body of the appellant before him at that time, and then and there to show cause of his detention of this appellant.

Upon the hearing of the habeas corpus proceedings, Judge Bowron entered an order denying the petition, stating in said order, "It is the judgment of this court that it does not have power to grant relief to the petitioners and the petition is denied * *."

In the habeas corpus proceedings before Judge Bowron, notice of such proceedings was given with Hon. Emmett Perry, Solicitor of Jefferson County, Alabama.

At the hearing in this court, Bowman Transportation, Inc., filed a special appearance, and a petition for leave to intervene in these proceedings.

This court considers that Bowman Transportation, Inc., being an interested party, should be and they hereby are permitted to intervene in these proceedings. Section 12, Title 15, Code of Alabama 1940.

In this special appearance and petition for leave to intervene, Bowman asserts that it is an adverse party in interest as is defined in Section 12, Title 15, Code of Alabama 1940, and that it has an interest in continuing the petitioner's imprisonment or restraint. It also further avers that it received no notice whatsoever of the issue of the writ of habeas corpus and of the time and place at which it was returnable as required by Section 12, supra, and that had such notice been given, Bowman would have appeared at the hearing, cross-examined petitioner's witnesses, and introduced testimony in opposition to the discharge of this appellant.

Under Section 12, supra, Bowman was entitled to notice of the habeas corpus proceedings. Since the writ was denied, Bowman was not injured by this failure of notice, though such failure of notice would in our opinion be a sufficient ground dictating the affirmance of Judge Bowron's decree denying relief.

Bowman has also filed a special appearance and a motion to strike or dismiss the original petition for writ of habeas corpus filed in this court on the grounds that the prior proceeding had before Judge Bowron precludes us from entertaining the original petition for habeas corpus in this court.

In Ex parte Hill, 229 Ala. 501, 158 So. 531, we find the following principles stated:

"* * * A criminal contempt is one in which the purpose of the proceeding is to impose punishment for disobedience to the orders of the court. A civil contempt invokes the power of the

court to commit one who is continuing to violate its orders until he complies with them. This court has held that the statutory limitations do not apply to civil contempts as thus defined. Ex parte Dickens, supra [162 Ala. 275, 50 So. 218], Ex parte Stickeny, 40 Ala. 160.

"So that, in respect to that contention, the question here seems to be dependent upon whether the court made an order as a punishment in the nature of a criminal contempt or on the other hand sought only to enforce a compliance with its writ of injunction. The decree of the court settles that question. * * *

"For a continuing failure to comply, the court can commit until there is a compliance, but not for a definite period as a punishment, except within the limits fixed by law. * * *

"But a court of equity has wide discretionary powers to enforce its orders, and they are so expressly granted by statute. Section 8576(3), Code, gives every court the power 'to compel obedience to its judgments,' etc. * *

"In the case of Gates v. McDaniel, 3 Port. 356, the court ordered the defendant to execute bond conditioned that he 'will comply' with the decree. But that requirement was made on presentation of a petition, without notice and hearing. *It was not held that the court could not make such a requirement after notice and hearing.*

"The extent to which the court may go in enforcing its decrees is dependent upon the circumstances of each case, and is within its discretion, reviewable here." (Italics ours.)

■ We think the above stated principles clearly disclose the power of the equity court to have required this appellant to give a bond to protect Bowman in its lawful business from continuing an irreparable damage, said injuries and violence, according to the decree of the court, having continued even into the closing days of the contempt hearing, despite a solemn writ running in the name and by authority of the State of Alabama.

■ We are now, in these proceedings, called upon to review the action of Judge Bowron in denying the petitioner relief in the habeas corpus proceedings filed before him, and further, in the original petition for habeas corpus filed in this court, to review the action of Judge Giles in fixing the amount of bond at $200,000.00, to insure that this appellant and the other respondents in the contempt proceedings will desist from the contemptuous and contumacious conduct they have evidenced toward the injunction issued by Judge Giles. Other than the amount of the bond, and the decree fixing it, we have no evidence before us as to whether such bond is unreasonable. There is no transcript of evidence before us relative to the contempt proceedings before Judge Giles. We must take as true the finding in his decree as to the flagrant and contemptuous disregard of the orders of the court issued on 1 December 1961, restraining both the appellant and other members of Local 612, and the Bowman Transportation Company and certain of its officials and employees, from acts of violence.

Judge Giles, after a hearing lasting almost ten weeks, concluded that this appellant and the other respondents flagrantly disregarded the injunction against violence issued by him on 1 December 1961. The amount of the bond was fixed by Judge Giles after a full hearing as to the enormity and contumaciousness of the conduct of this appellant and the other respondents. There is no evidence before us upon which we could say that the amount of the bond fixed by Judge Giles was unreasonable, other than the evidence offered by this appellant and his co-respondents to the effect that they could not make a bond in the amount required. Even if this be so, the question of the amount of the bond neces-

sary to prevent further flouting of his order, and the continuing injury to Bowman, addressed itself primarily to Judge Giles. Particularly should this be so in view of the contumacious conduct by this appellant and his co-respondents, which is fully set forth in Judge Giles' decree.

In Keys v. Alligood, 178 N.C. 16, 100 S. E. 113, there had been an unlawful violation by respondent of an injunction, and in discussing the principles governing the appellate court, the North Carolina court made the following observations:

"We must be careful to remember in this connection that whether the defendant in an injunction suit who violates the order should be punished for the contempt shown the court concerns the court in the matter of the maintenance of its dignity and authority; but whether, by coercive or punitory measures, such defendants should be compelled to obey the writ issued by a competent court for the preservation of a civil right asserted by the plaintiff concerns the plaintiff, and the action of the trial court on that question may be subject to review on appeal; but where the court has full jurisdiction in the premises, its findings of fact, as to the disobedience of its order, are not open to review in a collateral proceeding, such as habeas corpus. (Citations omitted) Applying the foregoing principle to this case, we find that there has been an open and defiant violation of the interlocutory injunction issued by the court. * * * If a party, who has defied the court, and deliberately violated its order, cannot be made to yield full obedience to it by undoing what he has so flagrantly done in contempt of the court, and in plain violation of the plaintiff's rights, the arm of the court has lost its boasted strength, and its power to grant protective relief * * *."

Counsel for appellant argues that the doctrine of Robertson v. State, 20 Ala.App. 514, 104 So. 561, necessitates his petition for relief in the present case.

In the Robertson case, supra, the appellant had been adjudged guilty of civil contempt for non-payment of alimony and committed to jail. The petitioner thereafter presented a petition for a writ of habeas corpus to another circuit judge of the 10th Judicial Circuit who denied the petitioner the benefit of writ. Robertson thereupon appealed from this order, and also filed an original petition for habeas corpus in this court with a prayer for bail, pending a hearing on the petition and the appeal. This court ordered the writ to issue and the petitioner admitted to bail pending a hearing.

This court held the transcript of evidence of the contempt hearing below showed without dispute that Robertson was unable to pay the amount of alimony ordered to be paid, and that this was a complete defense to any charge of contempt against Robertson, and there being no contempt, the court was without jurisdiction to punish for contempt.

This doctrine can have no application to the present case wherein the decree of Judge Giles, which is the only evidence before us, clearly establishes the contempt.

■ Judge Giles having full jurisdiction in this case, and his decree being valid, the judgment entered by Judge Bowron in the habeas corpus proceeding before him, was fully justified under the provisions of Sec. 27, Tit. 15, Code of Alabama 1940, which provides:

"*Judgment, etc., or commitment for contempt not inquired into.*—No court, or judge, on the return of a writ of habeas corpus, has authority to inquire into the regularity or justice of any order, judgment, decree, or process of any court legally constituted, or into the justice or propriety of any commitment for contempt made by a court, officer, or body, according to law, and charged in such commitment."

It is hereby ordered that the judgment of Judge Bowron be affirmed, and that the petition for writ of habeas corpus filed in this court be denied.

Judgment appealed from affirmed; original petition for habeas corpus denied.