392 P.2d 343

**INTERNATIONAL MINERALS AND CHEM-ICAL CORPORATION, Plaintiff-Appellee,**

v.

**LOCAL 177, UNITED STONE AND AL-LIED PRODUCTS WORKERS, Casimer Alexandre, Harvey Barton, Ralph McKee and J. E. London, Defendants-Appellants.**

**No. 7366.**

Supreme Court of New Mexico.

May 11, 1964.

Kool & Kool, Albuquerque, for appellants.

Neal & Matkins, Carlsbad, for appellee.

J. V. GALLEGOS, District Judge.

The appellee, plaintiff below, is a corporation engaged in extracting and refining potash ore, operating in Eddy County.

The appellants, defendants below, are Local No. 177, a labor organization composed of employees in the potash industry in Eddy County, Casimir Alexandre, President of Local 177, Harry Barton, Ralph McKee and J. E. London members of Electrical, Stone Workers and Machinists Unions respectively.

On May 31, 1962 the appellants mentioned and others went on strike and on June 22, 1962, plaintiff filed its complaint and a temporary restraining order in line with the relief sought by the plaintiff was issued by the district court on the same day re-

straining some twenty-nine defendants, unions and individuals, from acts or threats of violence or intimidation of plaintiff's employees or interference with ingress or egress to plaintiff's place of business.

Thereafter the plaintiff obtained an order directed to certain of the defendants, and additional defendants brought in on motion, to appear and show cause why they should not be held in contempt for violation of the Court's restraining order. The defendants filed their Answer and also a Response to the Order to Show Cause.

A hearing was had on the Order to Show Cause, testimony was presented by appellee through its witnesses and through some of the defendants who were called by appellee apparently as adverse witnesses. The appellants also presented testimony at the hearing. The Court entered its decision and judgment holding ten of the twenty-nine defendants in contempt and they were * * * "sentenced as punishment for their several acts of contempt. * * *"

Only the four defendants above named and Local 177 remain as appellants.

The Local was fined $10,000.00; Alexandre was fined $1,000.00 and ordered to serve thirty days in jail; the other three remaining appellants, Barton, McKee and London, were committed to jail for thirty days.

It is clear from the pleadings and the manner in which the hearing was conducted that appellee, while in the court below, considered the whole proceedings civil in nature, whereas on appeal the appellee states and contends that the proceedings were criminal. The appellee called some of the defendants as witnesses during the contempt hearing and although counsel for the defendants called attention to the court that they should be warned against possible incrimination against themselves by such testimony, they were not so warned; the language used by the court in that ruling and during and at the conclusion of the hearing shows that the court also considered that the proceeding was civil in nature. However, after concluding that the defendants were in contempt of court, from the testimony submitted, the court imposed fines and jail sentences which are purely criminal in nature.

The appellants contend that the proceedings were for civil contempt and that the court was without jurisdiction or authority to impose imprisonment for a definite period, or fines other than requiring the payment of certain sums for the benefit of the appellee. The appellee now contends that the proceedings were criminal in nature for the purpose of vindicating the court's authority, rather than for pecuniary loss or damage to appellee, and that the fines and imprisonment were properly imposed.

If, in this case, the sentences and fines imposed were wholly punitive to vindicate

the authority of the court, they could have been properly imposed only in a proceeding instituted and tried as for criminal contempt. It would have been necessary that the evidence prove that the defendants were guilty beyond a reasonable doubt and in such proceeding the defendants could not be denied immunity against self-incrimination. If, however, this was a civil contempt, the punishment should have been remedial for the benefit of the plaintiff measured in some degree by the pecuniary injury caused by the acts of disobedience or coercive to compel the defendants to comply with the order of the court. See Gompers v. Buck's Stove and Range Company, 221 U.S. 418, 31 S.Ct. 492, 55 L.Ed. 797.

■ In determining whether contempt proceeding is civil or criminal or whether it partakes of the characteristics of both, New Mexico has for years followed the distinctions made in Gompers v. Buck's Stove and Range Company, supra, recognizing the nature and purpose of the punishment, rather than the character of the acts to be punished, as a controlling factor.

■ Commitments and fines for criminal contempt are imposed for the purpose of vindicating the authority of the court and are punitive in nature and intended as a deterrent to offenses against the public. Punishment for civil contempt is remedial and for the benefit of the complainant; it is coercive rather than punitive and is made contingent upon the defendants' compliance with the order of the court; the defendant "carries the keys to his prison in his own pocket." However, indirect consequences of punishment, whether in civil or criminal proceedings, will not change that which is coercive and remedial into that which is solely punitive, or vice versa. State v. Magee Pub. Co., et al., 29 N.M. 455, 224 P. 1028, 38 A.L.R. 142; Costilla Land & Inv. Co. v. Allen, et al., 15 N.M. 528, 110 P. 847; New Jersey Zinc Co. v. Local 890 of International Union, etc., 57 N.M. 617, 261 P.2d 648; Jencks v. Goforth, 57 N.M. 627, 261 P.2d 655; Local 890 of International Union of Mine, etc. v. New Jersey Zinc Co., 58 N.M. 416, 272 P.2d 322.

■ That the acts complained of are indictable crimes may be considered in determining the contempt proceedings "criminal." State ex rel. Bliss v. Greenwood, 63 N.M. 156, 315 P.2d 223; Michaelson v. United States, 266 U.S. 42, 45 S.Ct. 18, 69 L.Ed. 162.

■ In Gompers v. Buck Stove & Range Co., supra, the court stated that there was a variance between the proceedings adopted, civil in nature, and the punishment imposed, solely punitive, criminal in nature. Among other factors, the court took into consideration the parties to the proceedings being private parties, and the nature of the sentence imposed. The present case is very

similar with Gompers in that the parties to the proceedings are private parties which indicates a civil proceeding, and the sentences imposed indicate a criminal proceeding. Although the parties to the action, whether they be individuals or the state, are not always decisive of the nature of the contempt, it is, however, indicative of the nature of the contempt. Rhodes v. State, 58 N.M. 579, 273 P.2d 852.

In a recent case, Boyd v. State, 42 Ala. App. 183, 158 So.2d 116 the judge in contempt proceedings growing out of injunction against a local union, its members, and others, restraining them from acts of violence, makes somewhat similar remarks to those made by the trial judge in the present case as to the flagrant disregard of the court's order, but the Alabama court found that it was not a criminal proceeding and that the primary purpose was to conserve the lawful private business rights calling for remedial action.

The general rule is that an accused in a criminal contempt proceeding is presumed innocent until found guilty beyond a reasonable doubt by evidence introduced and a defendant in a criminal contempt procceding cannot be compelled to testify against himself. Since wilful disobedience of a court's order is punishable by traditional criminal proceedings and is sometimes referred to as quasi-criminal, the essential rights of the accused must be preserved and safeguarded. State ·v. New Mexican Printing Co., 25 N.M. 102, 177 P. 751; Columbia Law Review, Vol. 43, pp. 780, et seq. Moskovitz "Contempt of Injunctions, Civil and Criminal." Gompers v. Buck Stove & Range Co., supra; 54 A.L.R. 1436.

The United States Supreme Court in Gompers v. Buck Stove & Range Co., supra, stated:

"The petition ·in the contempt proceeding, the answer, orders, final decree, amended decree, and stipulations, were all entitled in the original cause, 'Buck Stove & Range Company v. The American Federation of Labor, Samuel Gompers, John Mitchell, Frank Morrison, et al.' * * *

"The defendants, Samuel Gompers, John Mitchell, and Frank Morrison, were found guilty of contempt of court in making certain publications prohibited by an injunction from the supreme court of the District of Columbia. They were sentenced to imprisonment for twelve, nine, and six months respectively, and this proceeding is prosecuted to reverse that judgment. * * * But if it is for criminal contempt the sentence is punitive to vindicate the authority of the court. * * * Imprisonment in such cases (civil contempt) is not inflicted as a punishment, but is intended to be remedial by coercing the

defendant to do what he had refused to do. The decree in such cases is that the defendant stand committed unless and until he performs the affirmative act required by the court's order. * * *

"But when the court found that the defendants had done what the injunction prohibited, and thereupon sentenced them to jail for fixed terms of six, nine, and twelve months, no relief whatever was granted to the complainant, and the Buck's Stove & Range Company took nothing by that decree.

* * *

"We find nothing in the record indicating that this was a proceeding with the court, or more properly the government, on one side and the defendants on the other. On the contrary, the contempt proceedings were instituted, entitled, tried, *and, up to the moment of sentence,* treated as a part of the original cause in equity. The Buck's Stove & Range Company was not only the nominal, but the actual, party on the one side, with the defendants on the other. The Buck's Stove Company acted throughout as complainant in charge of the litigation. As such and through its counsel, acting in its name, it made consents, waivers, and stipulations only proper on the theory that it was proceeding in its own right in an equity cause, and not as a representative of the United States, prosecuting a case of criminal contempt. * * * (Italics ours.)

" * * * The result was as fundamentally erroneous as if in an action of 'A vs. B, for assault and battery,' the judgment entered had been that the defendant be confined in prison for twelve months."

■ It should be kept in mind that the authority or power of contempt should be used cautiously and sparingly. This was said by Justice Seymour in New Jersey Zinc Co. v. Local 890 of International Union etc., 57 N.M. 617, 261 P.2d 648:

"[T]he theory of our government and our history leaves no question as to the strength and vitality of the power vested in the judiciary. If that power lives in fear of its derogation, it is a dangerous thing. The dominating idea must be the responsibility of the judiciary to exercise that power wisely and always within its limitations."

■ Although the present case commenced as a civil proceeding, the action of the trial court was improper and unauthorized, in that it imposed sentences on the appellants for a definite period of time and also imposed fines which were solely punitive and criminal in their nature. Under the circumstances here present, the fines were not for the benefit of the complainant

(appellee herein); neither were the sentences coercive in nature.

It follows that the Order and Judgment of the District Court must be reversed and the sentences and fines imposed upon the appellants, Local 177, Alexandre, McKee, Barton and London, should be and are hereby set aside and vacated and the appellants are released and discharged.

It is so ordered.

CARMODY and CHAVEZ, JJ., concur.