261 P.2d 648

**NEW JERSEY ZINC CO. v. LOCAL 890
OF INTERNATIONAL UNION OF MINE,
MILL & SMELTER WORKERS et al.
No. 5626.**

Supreme Court of New Mexico.
Sept. 25, 1953.

Edison C. Serna, Silver City, Hannett & Hannett, W. S. Lindamood, Albuquerque, for appellants.

Garland, Sanders & Cooney, Las Cruces, for appellee.

SEYMOUR, Justice.

This is an appeal from a decree of the district court of Grant County, adjudging the defendants, appellants, in contempt of court for violating a permanent injunction issued by the court on July 9, 1951. These *civil* contempt proceedings arose out of an injunction suit filed in the district court by plaintiff, appellee, wherein it sought a temporary restraining order and a permanent injunction enjoining appellants from trespassing on appellee's property and from blocking roads and other entrances to the property of appellee in such a manner as to restrain or coerce employees of appellee from returning to work. On July 9, 1951, the district court granted a permanent injunction, the relevant portion of which reads as follows:

"1. That defendants and each of them, and their wives, mothers, sisters and children as their agents, be and they are hereby permanently enjoined and restrained from trespassing upon plaintiff's property and blocking the roads and other entrances to the property of plaintiff in such manner as to restrain, coerce or prevent the employees of plaintiff from returning to work, or from illegally attempting to keep said employees from continuing in their employment with plaintiff."

On December 18, 1951, appellee filed its motion for order to show cause seeking to have appellants held in contempt for violation of the permanent injunction, the alleged violations occurring December 6 through December 18, inclusive, 1951. Hearing was had February 28 and 29, 1952. Decision of the trial court was rendered March 10, 1952 finding appellants guilty of contempt and levying specific fines in varying amounts, totalling $5,720, in part against the unions and in part against the individual appellants, to be paid to the clerk of the court for the use and benefit of appellee as compensation for its losses and damages by reason of the violation of the permanent injunction.

The matter is now here on appeal from the contempt decree growing out of the order to show cause; for a better understanding of the position of this case in the many litigated matters arising out of a single strike, reference is made to the opinion this day filed by this Court in the case of Jencks v. Goforth, 57 N.M. 627, 261 P.2d 655.

The first matter requiring disposition is the motion to dismiss appeal filed by at-

torneys for appellee in this Court on April 30, 1953, ruling thereon having been reserved until this time. The grounds of this motion are four in number, the first three asserting the lack of jurisdiction on the part of the trial court to extend the time of filing of transcript and bill of exceptions after the original return date therefor. A subsidiary point ·briefed in support of the motion was the failure of appellants to give notice to appellee of appellants' motion for extension, such notice being provided for in the last sentence of Rule 13(7) of the Rules of this Court reading as follows:

"A second or subsequent extension of time for filing transcript may be granted only after notice to the appellee."

The fourth ground for the motion asserts a failure on the part of appellants to include in their brief a "Statement of facts" as required by Rule 15(14) (3) Supreme Court Rules.

■ The motion on the first three grounds and on the matter of notice is overruled on the basis of National Mut. Savings & Loan Ass'n v. McGhee, 1934, 38 N.M. 442, 34 P.2d 1093, in which there is an exhaustive discussion of related matters. Justice Sadler's opinion deals specifically with the matter of extension, and his reasoning and conclusion adequately cover the failure of notice as required by the above cited Supreme Court Rule. This case has been carried forward with approval in City of Raton v. Seaberg, 1935, 39 N.M. 544, 51 P.2d 606, and Harnish v. Urbanoski, 1941, 45 N.M. 108, 111 P.2d 859.

■ As to the fourth ground of the motion, addressed to appellants' Statement of Facts in their brief, we find no merit. The questions raised by this appeal are almost exclusively legal ones unrelated to the testimony reported at length in the transcript. The statement in appellants' brief denominated "Statement of ˙Facts" serves the necessary purpose of placing before this Court those facts upon which decision must be made. A detail of the testimony would serve little purpose in the particular case. Under these circumstances, appellants' statement of facts is deemed sufficient.

Turning to the merits of the controversy, Point I of the appellants' brief comprehends assignments of error numbered 1, 2 and 3, and raises the controlling question in this case. Point I reads as follows:

"The court was without jurisdiction to proceed with the civil contempt proceedings herein for the reason that, pending trial of such contempt proceedings, the strike, which was the basis of the original complaint, was settled and the dispute between the parties terminated."

The permanent injunction of the trial court was filed July 9, 1951. Paragraph 5 of appellee's original complaint alleged:

"That on the 17th day of October, 1950, the operations of plaintiff were discontinued due to a strike instituted by defendants."

The acts complained of and against which appellee sought relief were the allegedly unlawful acts of appellants in their picketing. After lengthy hearing, the trial court found the facts to be as alleged in the complaint and issued the permanent injunction. There was no appeal taken and the permanent injunction remains today as it was July 9, 1951.

This contempt action, stemming from the original equity case, commenced December 18, 1951, and was heard on the merits February 28 and 29, 1952; the decree from which this appeal is taken was entered March 10, 1952.

It is undisputed that the strike mentioned in paragraph 5 of the equity complaint was settled in late January of 1952 and that the picket line was withdrawn and ceased to exist.

The question for determination is whether or not the settlement of the strike and the withdrawal of the picket line terminated the jurisdiction of the lower court to continue the trial of and make disposition of the civil contempt proceedings commenced a month before such settlement and withdrawal.

A leading case in this country on the subject of contempt is Gompers v. Buck's Stove & Range Co., 1911, 221 U.S. 418, 31 S.Ct. 492, 502, 55 L.Ed. 797. In that case, the defendants, Samuel Gompers and others, were found guilty of contempt of court in making certain publications prohibited by injunction. They were sentenced to imprisonment for twelve, nine and six months respectively. Much of the opinion of the Supreme Court was devoted to the problem of whether or not these sentences for a fixed period of imprisonment were proper in a civil contempt proceedings. Without making a decision on that question, the opinion of the Court concluded as follows:

"* * * it is both unnecessary and improper to make any decree in this contempt proceeding.

"For, on the hearing of the appeal and cross appeal in the original cause in which the injunction was issued, it appeared from the statement of counsel in open court that there had been a complete settlement of all matters involved in the case of Buck's Stove & Range Co. v. American Federation of Labor. This court therefore declined to further consider the case, which had become moot, and those two appeals were dismissed. 219 U.S. 581, 31 S.Ct. 472, 55 L.Ed. 345. When the main case was settled, every proceeding which was dependent on it, or a part of it, was also necessarily settled,—of course, without prejudice to the power

and right of the court to punish for contempt by proper proceedings. Worden v. Searls, 121 U.S. [14] 27, 7 S.Ct. 814, 30 L.Ed. [853], 858. If this had been a separate and independent proceeding at law for criminal contempt, to vindicate the authority of the court, with the public on one side and the defendants on the other, it could not, in any way, have been affected by any settlement which the parties to the equity cause made in their private litigation.

"But, as we have shown, this was a proceeding in equity for civil contempt, where the only remedial relief possible was a fine, payable to the complainant. The company prayed 'for such relief as the nature of its case may require,' and when the main cause was terminated by a settlement of all differences between the parties, the complainant did not require, and was not entitled to, any compensation or relief of any other character. The present proceeding necessarily ended with the settlement of the main cause of which it is a part. Bessette v. W. B. Conkey, Co., 194 U.S. [324] 328, 333, 24 S.Ct. 665, 48 L.Ed. [997], 1002, 1004; Worden v. Searls, 121 U.S. [14], 27, 7 S.Ct. 814, 30 L.Ed. [853] 858; State v. Nathans, 49 S.C. [199] 207, 27 S.E. 52. The criminal sentences imposed in the civil case, therefore, should be set aside."

There is no question that, in the Gompers case, there was a complete dismissal of the original equity suit out of which grew the contempt action. The language of Mr. Justice Lamar in this regard is:

"* * * a complete settlement of all matters involved in the case * * *"

and

"when the main case was settled, * * *"

and

"* * * the settlement of the main cause of which it is a part."

It is the contention of appellee that the Gompers case is distinguishable and not controlling because, in the case before this Court, the permanent injunction was issued and remains in existence on the records to this day.

Many cases bearing upon the question are cited by both parties. It is the conclusion of this Court that the principle of Gompers v. Buck's Stove & Range Co., supra, is applicable to and conclusive of the instant case.

It is one contention of appellee that the original suit in equity did not seek an injunction against the strike but against certain picketing activities, and the termination of the strike was therefore irrelevant as regards "the settlement of the main cause." This would seem unsound in view of the case of Pacific Gamble Robinson Co. v. Minneapolis & St. L. Ry. Co., D.C., 1950,

92 F.Supp. 352, 353. In that case, a temporary injunction was issued requiring defendant to furnish refrigerator cars to the plaintiff. The main action seeking a mandatory injunction was continued, pending determination of an appeal on the propriety of the temporary injunction. The appeal was dismissed on the ground that the question was moot,

"* * * because defendant had begun to furnish the refrigerator cars required by plaintiff on or about June 20, 1949. At that time, the plaintiff's employees had ended their strike, which defendant contended prevented service to plaintiff, * * *.

"The trial of the main action, which seeks a permanent mandatory injunction, has been continued in this Court pending the decision of the Court of Appeals on the appeal from the granting of the temporary injunction. Plaintiff now admits that no permanent injunction is necessary in order for it to obtain from defendant the refrigerator cars which it now needs, and no other relief is requested in the complaint. Plaintiff objects to the dismissal, however, upon the ground that a civil contempt proceeding, which it now has pending against defendant seeking a fine for its benefit in the sum of $205,118.64 by reason of damages sustained for alleged violation of the temporary injunction, has not been disposed of. Plaintiff alleges, and defendant apparently does not deny for the purpose of this motion, that defendant failed and refused to furnish refrigerator cars to plaintiff after this Court issued the temporary mandatory injunction and until the strike of plaintiff's employees ended. * * *

"The main question is, Should an action for a mandatory injunction be dismissed when it becomes moot if a civil contempt proceeding is pending against that defendant for violation of the temporary mandatory injunction before the action became moot?

* * * * * *

"It must be emphasized that the primary purpose of a civil contempt proceeding is to enforce obedience to the Court's order. Parker v. United States, 1 Cir., 153 F.2d 66, 163 A.L.R. 379. The purpose is remedial. In issuing a mandatory injunction, the Court in event of disobedience may place the violator in custody until he obeys the Court's order. But such disposition would not be by way of punishment, but rather as a means to enforce the Court's decree. Any assessment of a fine in a civil contempt proceeding against a defendant for a violation of the temporary mandatory injunction would likewise be imposed primarily as a remedial measure with incidental benefit to the plaintiff, in

that the fine may be determined for his use in light of the injury to him. But, in the instant controversy, there is now no need for any proceeding in civil contempt to assess damages for plaintiff's benefit in order to coerce defendant to comply with the Court's order. 'The remedy of an injunction is preventive and looks only to the future.' '

The foregoing opinion then cites with approval and discusses the Gompers case, and further states:

"The fact of termination without need of further equitable relief, not the cause of termination, seems to be the basis for the Gompers decision. * * For here, as plaintiff also recognizes, a permanent injunction is not necessary. Defendant is doing that which plaintiff requests. No danger of defendant's failure to comply with the temporary injunction in the future is shown. The strike of plaintiff's employees which was the alleged reason for defendant's failure to serve plaintiff no longer exists. No need for either a temporary or permanent injunction appears. * * * There is no fundamental distinction between the settlement of a controversy as in the Gompers case, a trial on the merits adverse to plaintiff as in Worden v. Searls, supra, or the mootness of the controversy between the parties hereto, which deprives a court of equity of any jurisdiction to proceed further in determining the question of injunctive relief."

The Court in the foregoing case required a dismissal of the main action including the civil contempt proceedings, without, however, prejudice to: (a) the Court's right to act on any criminal contempt; and (b) the plaintiff's right to proceed against the defendant in a court of competent jurisdiction for damages.

This case of Pacific Gamble Robinson Co. v. Minneapolis & St. L. Ry. Co., supra, convinces us of the relevancy of the ending of the strike and the withdrawal of picket lines in trying to determine whether there has been a settlement of the main cause within the meaning of the Gompers case. It is further to be noted that this case dealt with a fine, such as here involved, as distinguished from the imprisonment involved in the Gompers case.

The question arises as to the effect, in the instant case, of having the permanent injunction issued, unappealed from, and still in effect. Consideration of the various cases cited leads to the conclusion that this is a difference without substance. Harris v. Texas & Pac. Ry. Co., 7 Cir., 1952, 196 F.2d 88, 90, and the language of the Pacific Gamble Robinson Company case quoted above sustain this conclusion. The case of Harris v. Texas & Pac. Ry. Co., su-

pra, involves a suit by Harris against the railroad company under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq. Harris procured issuance of a subpoena duces tecum directing a secretary of the Railroad Retirement Board to produce certain documents. She declined to do so. An order to show cause was issued against her and, on hearing, she was held to be in contempt and was committed to the custody of the Attorney General. The date of such order was September 25, 1951. On the same date, Harris was awarded judgment for $36,000 against the railroad and, on October 2, 1951, the judgment was paid in full and satisfied of record. The decree of contempt was appealed and the Circuit Court held that it was a civil contempt, and set aside the judgment of contempt, stating:

"The courts have consistently ruled that civil contempt proceedings are abated by a termination of the proceedings out of which they arose. United States v. United Mine Workers of America, 330 U.S. 258, 295, 67 S.Ct. 677, 91 L.Ed. 884; Gompers v. Buck's Stove & Range Co., 221 U.S. 418, 451, 31 S.Ct. 492, 55 L.Ed. 797; United States v. International Union, [88 U.S.App.D.C. 341] 190 F.2d 865, 874; Parker v. United States, 1 Cir., 153 F.2d 66 [163 A.L.R. 379]. In the latter case the court said, 153 F.2d at page 71: 'Since the complainant in the main cause is the real party in interest with respect to a compensatory fine or other remedial order in a civil contempt proceeding, if for any reason complainant becomes disentitled to the further benefit of such order, the civil contempt proceeding must be terminated.' Here the proceedings in which the subpoena duces tecum was issued in Illinois was ancillary to Harris' action against the railway company then pending in Texas, in which there has been a final adjudication and settlement."

We fail to see any distinction of substance between the case of Harris v. Texas & Pacific Ry. Co., supra, and the instant case. In that case, the main action went to judgment and the judgment was satisfied. There was nothing else to do and the matter remains today in the court records. In the instant case, the permanent injunction was entered, the appeal period expired, and that, too, remains on the records today; but, with the conclusion of the strike and the withdrawal of the picket lines, the permanent injunction became a matter of history. If appellee takes the position that an order should have been entered in the original equity case dissolving the permanent injunction, we cannot follow it that far—such an order is simply a piece of paper and has nothing to do with reality.

In the light of the foregoing cases, if this Court should find that there is a difference

between the situation before us and the principles announced in the Gompers decision, it would lead the law into distinctions of such nicety that they would serve only to make the law unusable and ununderstandable. Citation of other authorities supporting this conclusion is unnecessary, since the majority of such cases are cited in the above quotations.

The additional cases cited by appellee in support of its position can be readily distinguished from the case now before this Court, frequently on the basis that the instant case involves a civil contempt and that civil contempt relates fundamentally to the coercion of defendants into obedience. When this fundamental purpose cannot be served, civil contempt proceedings have no meaning.

The cases of Land v. Dollar, 1951, 88 U.S.App.D.C. 311, 190 F.2d 366, and National Labor Relations Board v. Star Metal Mfg. Co., 3 Cir., 1951, 187 F.2d 856, are not in conflict with the Gompers case. United States v. United Mine Workers, 1947, 330 U.S. 258, 67 S.Ct. 677, 91 L.Ed. 884, with exhaustive opinions by the majority of the members of the United States Supreme Court, still leaves the Gompers case and its reasoning unassailed.

Appellee further contends for the principle of equity jurisprudence that a court of equity, having assumed jurisdiction for one purpose will entertain it for all purposes, legal or equitable, connected with the principal controversy. Ample authority in our own decisions is cited. We find no merit in this contention; the situation might be different if appellee had sought damages in and as a part of its original action in equity In such event, the equity court, absent appellee's consent to settlement, would have retained jurisdiction for the purpose of assessing damages. However, there was no such claim and the damages here involved, having the fundamental purpose of coercion in a civil contempt action, are not involved in the general equitable principle advanced by appellee.

█ Finally, in urging the validity of this contempt decree, great emphasis has been placed by appellee on the necessity of sustaining the dignity and authority of the courts. Much has been written on this subject in impressive and penetrating language. It cannot be stated better than it is by Mr. Justice Lamar in the Gompers case. In that regard, this Court feels impelled to say only this: That the activities of the appellants as revealed by the record indicate a violent and inexcusable contempt for the trial court and its orders; nevertheless, the theory of our government and our history leave no question as to the strength and vitality of the power vested in the judiciary. If that power lives in fear of its derogation, it is a dangerous thing. The dominating idea must be the responsibility of the judiciary to exercise that power wisely and always within its limitations.

In view of our conclusion on this first point, the other points raised by appellants require no decision.

The contempt decree of March 10, 1952 is vacated and set aside without prejudice, however, to the trial court's right to act on any criminal contempt which may have been committed, and without prejudice to appellee's right to proceed against appellants in a court of competent jurisdiction for damages allegedly sustained by appellee as a result of appellants' acts.

It is so ordered.

SADLER, C. J., and McGHEE, COMPTON, and LUJAN, JJ., concur.