272 P.2d 322

**LOCAL 890 OF INTERNATIONAL UNION OF MINE, MILL AND SMELTER WORKERS, et al.**

**v.**

**NEW JERSEY ZINC CO.**

No. 5579.

Supreme Court of New Mexico.

June 23, 1954.

A. T. Hannett, G. W. Hannett and W. S. Lindamood, Albuquerque, for plaintiffs in error.

C. C. Royall, Sr., H. O. Robertson, and J. R. Wrinkle, Silver City, amici curiae, for defendant in error.

SEYMOUR, Justice.

This matter arises on writ of error granted pursuant to Cause No. 5579 in this Court, reported 1953, 57 N.M. 627, 261 P. 2d 654, being entitled Local 890 of the International Union of Mine, Mill and Smelter Workers, et al., Plaintiffs in Error, v.

New Jersey Zinc Co., a corporation, Defendant in Error.

The place of this case in an extended history of litigation arising out of a 1951 labor dispute appears in the first nine paragraphs of our decision in Jencks v. Goforth, 1953, 57 N.M. 627, 261 P.2d 655, and need not be repeated here.

The first point relied upon by plaintiffs in error is stated as follows:

"The trial court erred in its judgment or order following the hearing on September 5, 1952, in finding the defendants guilty of violating the injunctive order involved for the reason that there was no substantial evidence that any of the defendants did or committed any act in defiance of the court's order, it appearing to the contrary that only women and children who were relatives of the striking miners actually performed the acts complained of, and it further appearing that the non-striking miners crashed the picket lines maintained by persons other than the defendants whenever they were so disposed, and no member of the general public complained of the highway being blocked."

A review of the transcript leaves this Court with no doubt in its mind as to the lack of merit in this contention. In addition to the very ample showing of physical violations

of the court's order of July 23, 1951, it is significant that the fines levied in the same order containing the suspended sentences here involved were paid in full by the two unions prior to the September 5, 1952, hearing on order to show cause why the suspension of sentences should not be revoked. While this is not determinative of the fact that the individual defendants violated the order of the court, as to which fact we are fully satisfied, it is certainly indicative of full knowledge on the part of all concerned that there was no substantial question as to whether or not the unions, their representatives and these particular defendants were in disobedience of the court's order.

Point II of plaintiffs in error reads as follows:

"The trial court erred in proceeding with civil contempt proceedings on September 5, 1952, which proceedings sought to invoke the suspended sentence imposed by the judgment of July 23, 1951 for the following reasons:

"A. That in the month of January, 1952, long before the hearing on September 5, 1952, the strike was settled, the picket line removed, and the dispute between the parties fully terminated.

"B. The court erred in overruling the motion of defendants to quash the order to show cause and in dismissing the same on September 5, 1952 before the taking of evidence started for the reason that a jail sentence may not be imposed for a definite term in a purely civil contempt proceeding where the alleged contempt was not committed in the presence of the court.

"C. The court erred in its judgment and order following a hearing on September 5 in invoking the suspended prison sentences imposed upon the plaintiffs in error by the judgment of July 23, 1951, for the reason that such sentences could not have a coercive or remedial effect upon defendants since the entire controversy between the parties had terminated in January, 1952. The coercive purpose of the judgment on July 23, 1951 had ended, and there was no act which the defendants could do or perform to purge themselves of said prison sentences of definite duration."

Point III reads as follows:

"The trial court erred in its judgment or order following the hearing on September 5, 1952, in that it found the defendants guilty of violating the injunctive order by a preponderance of the evidence and then invoked a suspended prison sentence of definite duration, which sentence could have been properly imposed only in a hearing for criminal contempt, and which sentence

required proof beyond a reasonable doubt rather than a mere preponderance of the evidence."

Point V raises substantially the same question as Point II B.

In originally granting the writ of error, it was this Court's thought that the only question possible for review was the sufficiency of the showing made September 5, 1951, to sustain the trial court's revocation of the suspension of defendants' sentences.

It is readily apparent from Points II, III and V that plaintiffs in error desire this Court to reconsider a number of its conclusions reached in Jencks v. Goforth, supra [57 N.M. 627, 261 P.2d 662]. There is considerable doubt as to whether or not these questions can be raised; however, plaintiffs in error say, as they have a right to do, that if we are satisfied that we are in error, we should be willing to acknowledge it and draw an opposite conclusion. They further question under Point IV of their brief the "law of the case" doctrine mentioned near the conclusion of our decision in Jencks v. Goforth, supra, as applied by this Court to certain questions there presented and again presented on this writ of error. In view of the detail and complexity of the fact situations involved in this series of cases, and the number of issues litigated, rather than complicate the "law of the case" doctrine and

that of res judicata, we shall disregard to some extent the question of whether or not these matters need be considered and treat them briefly on the merits. The propriety of so doing is reflected in Mr. Justice Watson's discussion of the "law of the case" doctrine at the conclusion of his opinion in Farmers' State Bank of Texhoma, Okl. v. Clayton National Bank, (Wolford, Intervener), 1926, 31 N.M. 344, 245 P. 543, 548, 46 A.L.R. 952.

■ As to Point II, sub-paragraph B, and Point V, we carefully reviewed in our consideration of Jencks v. Goforth, supra, the question of whether or not a suspended jail sentence for a definite term could be imposed in a contempt proceedings admittedly civil. The question was new and by nothing said in that opinion did we intend to indicate that this was the best method of handling a civil contempt; nevertheless, it was our conclusion then and remains our conclusion now that such sentence in the particular civil contempt proceedings was proper under the language of Mr. Justice Lamar in Gompers v. Buck's Stove & Range Co., 1911, 221 U.S. 418, 31 S.Ct. 492, 498, 55 L.Ed. 797. Mr. Justice Lamar, in the Gompers case, in speaking of imprisonment and the incidental coercive or punitive effects thereof, stated: " * * * But such indirect consequences will not change imprisonment which is

merely coercive and remedial, into that which is solely punitive in character, or *vice versa.*" We understand Mr. Justice Lamar to say that whether a sentence is punitive or coercive must be determined upon a realistic evaluation of the effect thereof. The foregoing language, coupled with the conditional fine imposed for coercive purposes in United States v. United Mine Workers, 1947, 330 U.S. 258, 67 S.Ct. 677, 91 L.Ed. 884, sustain us in our views already expressed on this question.

■ Point II, sub-paragraphs A and C, seeks to have us apply in the instant case the principle found determinative by this Court in New Jersey Zinc Co. v. Local 890 of International Union of Mine, Mill & Smelter Workers, 1953, 57 N.M. 617, 261 P.2d 648. In that case we determined that the trial court was without jurisdiction to proceed with civil contempt proceedings when, pending the trial thereof, the strike, which was the basis of the original complaint, was settled and the dispute between the parties terminated. In that case the hearing upon charges of contempt was had subsequent to the settlement of the strike and the fines then imposed. As of the time of the hearing, the fines imposed could not have a coercive effect because the strike was over and the picket lines gone.

The foregoing situation differs from the instant case in that the hearing on the contempt charges in the instant case was in late July, 1951, and the suspended sentences imposed long prior to the termination of the strike. As of that time the suspended sentences were well calculated to have a coercive effect upon the defendants as distinguished from the fine imposed in the New Jersey Zinc Co. case last above cited, which was imposed at a contempt hearing subsequent to the termination of the strike.

■■ The real essence of the position of plaintiffs in error lies in their view that the contempt hearing in the instant case was held, not in late July, 1951, but on September 5, 1952. In this view we consider plaintiffs in error to be mistaken, and in this difference of viewpoint appears the answer to the balance of their contentions.

We have heretofore said in Jencks v. Goforth, supra, that "actions in contempt are sui generis," and "we are not forced into the technicalities of a strict application of either the criminal or the civil law."

It remains our view that the contempt hearing in the instant case was had in late July, 1951, at which time a suspended sentence for a definite term was assessed in a civil contempt proceedings. What then was the character of the hearing on September 5, 1952? Since a suspended sentence is commonly a creature of the criminal law, it is there that the applicable

principles are found. This does not mean that the sentences here involved are criminal; we have found that they are not, Jencks v. Goforth, supra; we feel free, however, in contempt proceedings to draw both from criminal and civil law for the principles controlling our decision. There appears at 132 A.L.R. 1248 an annotation entitled, "Right to notice and hearing before revocation of suspension of sentence, parole, or conditional pardon." In the case of Fleenor v. Hammond, 6 Cir., 1941, 116 F.2d 982, 986, 132 A.L.R. 1241, dealing with the revocation of a conditional pardon, the court makes the following statement:

> "It is our conclusion that the petitioner's right to his freedom under the terms of the pardon could not be revoked without such hearing as is the generally accepted prerequisite of due process, if the exercise of such power by the Governor is challenged by unequivocal allegations that the petitioner has complied with the conditions of the grant. This does not mean that he is entitled to a trial in court, or a trial in any strict or formal sense. Due process is satisfied if there is reasonable opportunity extended to Fleenor to explain away accusation that he has violated the conditions upon which his pardon was granted. As was said in Escoe v. Zerbst, supra [295 U.S. 490,

55 S.Ct. 818, 79 L.Ed. 1566], the 'inquiry (should be) so fitted in its range to the needs of the occasion.' "

In short, we deem the hearing on September 5, 1952, analogous to the ancillary type of proceeding required by law in criminal cases involving the revocation of suspended sentences. While this question has not been specifically dealt with by this Court, the headnote, prepared by the Court, in Ex parte Lucero, 1917, 23 N.M. 433, 168 P. 713, L.R.A. 1918C, 549, would seem to have had the same problem in mind. It reads:

> "A convict is entitled to notice and an opportunity to be heard upon the question as to whether he has violated the conditions upon which the sentence against him has been suspended, where, as in this case, the suspension was during good behavior, which necessarily involves a question of fact. In proceedings to determine such a question, no particular formalities need be observed, and the convict is not entitled to a jury trial, except upon the question of his identity with the person originally sentenced, if such question is raised."

The Supreme Court of the United States in Burns v. United States, 1932, 287 U.S. 216, 53 S.Ct. 154, 77 L.Ed. 266, takes a similar view and the opinion, written by Mr. Chief Justice Hughes, expresses clearly

and in different words the idea contained in the foregoing quotations.

Pursuant to these views, we must deny the contention of the plaintiffs in error that the coerciveness of the suspended sentences is to be evaluated as of the hearing on September 5, 1952, long after the strike had ended; further, the foregoing disposes of the contention stated in Point III which asserts error in that the trial court stated at the conclusion of the hearing on September 5, 1952, that, "The court will find from a preponderance of the evidence here that the suspension of the sentences heretofore imposed, will be revoked * * *." It is our view under the foregoing authorities that the type of hearing, the procedure in such a hearing, and the weight to be given the evidence taken at such a hearing were largely matters in the trial court's discretion, and in the absence of a clear showing of an abuse of discretion, the action of the trial court will not be disturbed. No such abuse appears in the instant case.

Judgment of the trial court is affirmed and it is the direction of this Court that the defendants and each of them be forthwith remanded to the custody of the Sheriff of Grant county.

It is so ordered.

McGHEE, C. J., and SADLER, COMPTON, and LUJAN, JJ., concur.