Kirk & Williams, David N. Williams, Albuquerque, for respondent-appellant.

Steven C. Ewing, Albuquerque, for petitioner-appellee.

646 P.2d 1240

**Charlenea Lynn NIEMYJSKI, Petitioner-Appellee,**

v.

**Tadeusz NIEMYJSKI, Respondent-Appellant.**

**No. 13688.**

Supreme Court of New Mexico.

June 8, 1982.

## OPINION

RIORDAN, Justice.

Charlenea Niemyjski (Petitioner) instituted a contempt proceeding against Tadeusz Niemyjski (Respondent) for failure to pay child support. After a hearing for which Respondent was given notice and at which he was represented by counsel, the court found that Respondent was in arrears in the amount of $1,300 for failure to make the thirteen previous $100 monthly child support payments ordered by the court. The court held the Respondent in contempt, imposed a ten day jail sentence, fined the Respondent $500 and ordered the Respondent to pay a portion of Petitioner's attorney's fees. Respondent appeals the imposition of the jail sentence. We affirm.

Two points are raised on appeal:

I) The Respondent was denied due process.

II) The trial court abused its discretion in ordering Respondent incarcerated.

## I. *Due Process*

■ The Respondent claims that the trial court held him in criminal contempt of court. He is mistaken. In *State v. Rael*, 97 N.M. 640, 642 P.2d 1099 (1982), we held that a contempt action for child support enforcement is civil and not criminal. The act for which the Respondent is held in contempt is his failure to pay child support in compliance with the trial court order.

■ We examine the question of whether the imposition of a jail sentence as a contempt penalty can be imposed in a civil contempt proceeding. The Respondent, citing *Jencks v. Goforth*, 57 N.M. 627, 261 P.2d 655 (1953), argues that any penalty imposed in a civil contempt case must be purgeable and must impose the least burdensome sanction necessary to achieve the purpose of the contempt finding. The Respondent is mistaken in his reliance on *Jencks*. First, the *Jencks* case must be read in conjunction with *New Jersey Zinc Co. v. Local 890 of International Union, etc.*, 57 N.M. 617, 261 P.2d 648 (1953), which was decided the same day by this Court and was related to the decision in *Jencks*. Secondly, the *Jencks* case recognized the authority of the court in a civil contempt case to impose both a fine and jail sentence. The Court had even previously upheld the civil contempt finding and the imposition of a fine and suspended jail sentence involving the parties the previous year in *New Jersey Zinc Co. v. Local 890 of International Union, etc.*, 56 N.M. 447, 245 P.2d 156 (1952).

More recently, we again recognized that it is permissable for the trial court to impose a remedial penalty in a civil contempt case. *See Murphy v. Murphy*, 96 N.M. 401, 408, 631 P.2d 307, 314 (1981), where we stated:

There can be no doubt that the court could hold respondent in civil contempt of court for violating a court order that previously directed him to take certain action. * * * Nor is there any doubt that the judge could enforce such orders by * * * jail sentence. * * *

If the Respondent's position were to be adopted by us, it would throw the entire system of enforcement of child support or other court ordered payments into chaos. Any person ordered to make payments could merely ignore the court order until enforcement is sought knowing he could not be jailed for his refusal to obey the court order. We cannot follow such illogical reasoning that strips the court of the authority to enforce its orders.

## II. *Abuse of Discretion*

■ The Respondent alleges that the court abused its discretion by imposing a jail sentence because Respondent's financial condition shows his inability to pay, citing, *Matter of Hooker*, 94 N.M. 798, 617 P.2d 1313 (1980).

In *Matter of Hooker*, we held that "the elements necessary for a finding of civil contempt are: (1) knowledge of the court's order, and (2) an ability to comply." *Id.* at 799, 617 P.2d at 1314. First, Respondent clearly knew of his court order requiring needed child support payments. Secondly, having reviewed the transcript of the hearings in this case, there is sufficient evidence that Respondent was financially able to comply with his child support obligation and willfully refused to pay. For example, the record shows that during the period of January 1, 1981 to April 20, 1981, his gross income was in excess of $11,000 even though his liability for child support during this time would have been only $400. Respondent claims that he used all his funds for business and personal living expenses. If he did so, it was bad judgment on his part and clearly a willful violation of his obligation. It is unfortunate that he ignored *his most important single obligation, namely the support of his minor child.*

On appeal, this Court will view the evidence in a light most favorable to support the findings and conclusions of the trial court. We will not reverse unless convinced that the findings and conclusions cannot be sustained either by evidence or permissable inferences therefrom. *Lewis v. Barber's Super Markets, Inc.*, 72 N.M. 402, 384 P.2d 470 (1963).

Finally, the present child support proceeding is civil in nature. *Rael, supra.* A court may punish civil contempt by means of a jail sentence in particular proceedings. *See Local 890 of International Union of Mine, etc. v. New Jersey Zinc Co.*, 58 N.M. 416, 272 P.2d 322 (1954); *Murphy v. Murphy, supra; Rael, supra.* The jail sentence imposed on Respondent was remedial and imposed as punishment for non-compliance with payment in the past thirteen months.

We find that the court did not abuse its discretion in imposing a jail sentence. Indeed, because the Respondent had been before the trial court on three occasions since 1976 for failure to pay support, the judge would have been neglecting his duty had he not taken action to impress upon the Respondent the seriousness of his obligation.

The judgment of contempt ordering ten days in jail is affirmed.

PAYNE and FEDERICI, JJ., concur.

EASLEY, C. J., and SOSA, Senior Justice, dissent.

EASLEY, Chief Justice, and SOSA, Senior Justice, dissenting.

The majority reads *State v. Rael*, 97 N.M. 640, 642 P.2d 1099 (1982), to hold "that a contempt action for child support enforcement is civil and not criminal". However, *Rael* makes it clear that the *nature of the punishment* is critical. Also, the language in *Rael* is explicit that the defendant's ability to pay back support and thus avoid jail is also a critical factor in determining whether the contempt is civil or criminal. *Rael* relies very heavily on the fact that defendant

"has the keys to his own prison". *Rael* is not authority for a broad assertion that *all contempt actions* in child support enforcement cases are civil in nature.

The authorities are in accord that:

The major factor in determining whether a contempt is civil or criminal is the purpose for which the power is exercised. Civil contempts are those proceedings instituted to preserve and enforce the rights of private parties to suits and to compel obedience to the orders, writs, mandates and decrees of the court; whereas criminal contempt proceedings are instituted to preserve the authority and vindicate the dignity of the court. *State v. Greenwood*, 63 N.M. 156, 315 P.2d 223 (1957); *State v. Magee Pub. Co. et al.*, 29 N.M. 455, 224 P. 1028 (1924).

*Matter of Klecan*, 93 N.M. 637, 638, 603 P.2d 1094, 1095 (1979).

The purpose of the court in ordering the contempt citation here must be considered in determining whether this action is civil or criminal in nature. *Matter of Klecan, supra.* In support of its holding, the majority states that otherwise:

Any person ordered to make payments could merely ignore the court order until enforcement is sought knowing he could not be jailed for his refusal to obey the court order. We cannot follow such illogical reasoning that strips the court of the authority to enforce its orders.

It could not be more clear that the majority views the contempt citation as preserving the authority of the court. This is criminal contempt. *Matter of Klecan, supra.*

It is plain on the record that respondent was being *punished* for failure to abide by the court's order. Indeed, the majority so holds. The majority relies on *Murphy v. Murphy*, 96 N.M. 401, 631 P.2d 307 (1981) for the proposition that in a civil contempt proceeding a trial court may "impose a punitive penalty as punishment." The language relied on is dicta unsupported by any authority.

This is an exercise of the criminal contempt power to deprive an individual of his liberty. Due process standards of the federal and state constitutions require that respondent have the type of notice, hearing, and attendant rights and safeguards that accompany a criminal contempt proceeding.

Enforcing the support of children by their parents is an extremely important objective. Ensuring due process to those restrained of their liberty is likewise of great importance. These objectives do not conflict. It is a simple procedure to advise the offending party that he is charged with criminal contempt and that he may be represented by a lawyer and be heard on the matter at a given time. After notice and hearing, required by due process, a parent who refuses to support his or her child may be jailed just as surely for criminal contempt as for civil contempt. We must not abandon our constitutional precepts of due process in favor of the facility of summary justice.

I respectfully dissent.