*Bessie J. PELT*
Petitioner
*vs.*
*SHIPROCK DISTRICT COURT*[1]
Respondent

In the Supreme Court of the Navajo Nation

No. SC-CV-37-99

May 4, 2001

[1] Here, as in *Means v. District Court of the Chinle Judicial District*, 7 Nav. R. 382 (Nav. Nat. Sup. Ct. 1999), we changed the name of the respondent to reflect that in our practice, when an extraordinary writ runs against a judge, the appropriate respondent is the judge's court and not the judge.

Derek C. Haskew, Esq., DNA-People's Legal Services, Inc., Mexican Hat, Utah, for Petitioner.

Before YAZZIE, Chief Justice, and AUSTIN and SLOAN, Associate Justices.

Opinion delivered by Yazzie, Chief Justice.

This is an original action for a writ of *habeas corpus* to test the legality of the incarceration of the Petitioner, Bessie J. Pelt, for contempt of court for her failure to obey a court order directing her to satisfy a judgment rendered by the Shiprock District Court.

I

On July 27, 1999, the Petitioner went to the Shiprock District Court to seek a domestic abuse protection order against her husband, Hugh J. Pelt. She was informed that the temporary restraining order would not be ready until the next day (a practice which we specifically condemn), so she went home to Montezuma Creek, in the Utah portion of the Navajo Nation. She wanted police protection when she got home, but when she found a Navajo Nation police officer in Montezuma Creek and asked him for assistance, he said, "Sorry, you're under a warrant," and arrested her. The arrest was on a bench warrant issued by the Shiprock District Court for her failure to respond to an order to show cause on a judgment for a personal debt where she was a co-signer on a loan with her husband. She was taken to the Shiprock jail and incarcerated.

The next day, July 28, 1999, the Petitioner was brought before the Shiprock District Court and told that she was in jail for her failure to pay a judgment debt of $2,000. It arose from a joint personal loan from "Norwest" to the Petitioner and her husband. The Petitioner explained that she did not pay because her husband usually paid the family bills and she was unemployed. Despite that, the court issued an order of temporary commitment for the specific reason of the Petitioner's failure to obey a court order by satisfying a judgment. Release was conditioned upon the payment of a $2,000 cash bond (the amount of the judgment).

On July 30, 1999, the Petitioner's attorney presented a petition for a writ of *habeas corpus* to this Court at Diné College at Tsaile, Navajo Nation (Arizona), and we granted a writ and ordered the Petitioner's immediate release from jail.[2] We ordered the respondent to show cause why a permanent writ of *habeas corpus* should not be issued, and given the lack of a response to that order, the Court now renders its decision.

## II

This case raises the question of whether incarceration for a civil debt is prohibited in the Navajo Nation. It is a difficult question for many reasons: First, many states have abolished imprisonment for debt in their state constitution, so there is little American jurisprudence on the subject. There is no such provision in the Navajo Nation Bill of Rights, although "Life, liberty, and the pursuit of happiness are recognized as fundamental individual rights of all human beings." 1 N.N.C. § 3 (1995) (we will return to the fundamental right of liberty below). Second, the United States has not generally abolished imprisonment for a civil debt, and the only limitation is that federal courts may not imprison anyone for a debt "in any State wherein imprisonment for debt has been abolished." 28 U.S.C. § 2007; *see also, Dunlop v. Fisher*, 406 F. Supp. 760, 761 (D.C. Colo., 1976). Third, there is a current controversy regarding whether incarceration may be used to enforce child support orders, and the United States Supreme Court has upheld such incarceration under the Due Process Clause of the Fourteenth Amendment, so long as it is for civil contempt and not criminal contempt. *Hicks v. Feiock*, 485 U.S. 624 (1988). Fourth, even in states which have abolished imprisonment for debt and follow the "general rule that there is no authority for executing an adjudged civil liability for payment of money against the body of an obligor," there are recognized exceptions to that rule when carved out by statute (*e.g.* divorce orders). *Potter v. Wilson*, 609 P.2d 1278, 1280-81 (Okla. 1980) (emphasis in original). Accordingly, given the difficulty in framing a general rule, we will restrict our focus to the question of whether a judgment debtor who fails to pay a civil judgment on a contract for a loan may be incarcerated for failure to pay the judgment, whether the judgment debtor is indigent or not.

## III

The Petitioner urges us to simply rule that the remedies for the execution of

2 While 7 N.N.C. § 301(B) (1995) commands that "The Supreme Court of the Navajo Nation shall sit at Window Rock, Navajo Nation, (Arizona)," we apply the ancient Navajo customary practice that in an emergency, official business can be conducted at any place that a *Naat'ánnii* can be found. When the petition for a writ of *habeas corpus* was presented, the justices were at lunch during a court education seminar at Diné College. The fundamental due process right of access to the courts compelled us to sit at the College and issue the writ there. Accordingly, we construe section 301(B) to mean that the offices of the Court shall be at Window Rock, and that the Court may conduct judicial business at any necessary or reasonable place.

judgments should be limited to our civil execution statutes at 7 N.N.C. §§ 705-711 (1995) and Rule 68 of the Navajo Rules of Civil Procedure. We hesitate to do so, because our civil execution statutes are old, and we are being called upon to find the means to make certain that Navajo Nation judgments are enforced. *See*, Standard 3.5, Responsibility for Enforcement, Commission on Trial Court Performance Standards, *Trial Court Performance Standards* (1990) ("The trial court takes appropriate responsibility for the enforcement of its orders.") In addition, Rule 68 permits any proceeding "on and in aid of execution" that is "provided by law." We need to decide whether this sort of "aid of execution" is permitted by Navajo Nation law. We choose to approach that question by asking what the "liberty" interest in 1 N.N.C. § 3 (1995) means in relation to incarceration for a civil contract judgment debt.

A case that is very much like ours is *In the Matter of Coetzee*, Case No. CCT 19/94 (Constitutional Court of South Africa, September 22, 1995).[3] This decision addressed a statute that was used to enforce judgment debts. *Id.*, slip op. at 4. It required a judgment debtor to satisfy a judgment debt within ten days of the judgment, and if the debtor did not, he or she could be required to attend a hearing where the magistrate would look into the financial position of the debtor, the ability to pay and the failure to do so. The debtor could be ordered to pay the debt in installment,[4] but the magistrate also had the power to "commit the judgment debtor to prison for contempt of court for failure to pay the debt." *Id.* at 5. One of the difficulties with the statute was that it did not "adequately distinguish between the fundamentally different categories of judgment debtors: those who cannot pay and those who can pay but do not want to." *Id.* at 6. There was another important consideration: "The system at issue is used most, often for the collection of small debts usually of those who are poor and either illiterate or uninformed about the law or both. In the nature of things they do not enjoy legal representation." *Id.* That is a pertinent consideration for us as well, and this is a small claims case, where defendants usually do not have legal representation.

The Court applied a section of the (provisional) Constitution of South Africa which stated that "Every person shall have the right to freedom and security of the person, which shall include the right not to be detained without a trial." *Id.* at 7. This is essentially the same concept as the "right to liberty" provision in 1

3 Given the ability to access court decisions around the world via internet, we will use decisions from progressive courts, such as the Constitutional Court of South Africa, which deal with contemporary human rights issues. We have much to learn about how other countries are dealing with human rights issues, and because the Navajo Nation is a "nation," we will look to other nation's courts, as well as those of the states and federal government, for guidance on human rights issues.

4 The Navajo Nation courts do this as a matter of a judicial custom which dates from the old Navajo Court of Indian Offenses.

N.N.C. § 3[5] and we will apply that section here.

The majority struck down the statute for "seven distinct reasons," having to do with defects in notice, ignorance of possible defenses, the burden to show inability to pay, the punitive nature of the statute, ignorance of the burden of proof, harsher treatment as a civil judgment debtor than the treatment given to a criminal, and the lack of an appeal. *Id.* at 10-12.

Justice Sach's separate opinion,[6] gives a comprehensive review of the human right to be free of imprisonment for debt around the world. He notes that "[a]t first sight, it would appear that imprisonment for debt is totally prohibited in international law and practice." *Id.* at 43 (citing Sieghart, *The International Law of Human Rights* 87, n.1 (1983)). However, Justice Sachs then encountered the same problem that we noted above: What does "imprisonment for debt" mean? *Id.* at 44. According to one interpretation of the international right, it means this:

[T]he obligation concerned must arise out of contract; the prohibition does not apply to obligations arising from legislation in public or private law. Nor does the prohibition apply if the debtor acts with malicious or fraudulent intent; or if a person deliberately refuses to fulfill an obligation; irrespective of his reasons therefore, nor if his inability to meet a commitment is due to negligence. In these circumstances, the failure to fulfill a contractual obligation may legitimately constitute a criminal offense. *Id.* at 45 (citation omitted).

Accordingly, the international rule prohibits "any deprivation of liberty for the sole reason that the individual had not the material means of fulfilling his or her material obligations," but "it does not cover deprivations of liberty based on nonfulfillment of statutory obligations, nor does it include criminal offenses related to civil law debts, persons who simply refuse to honour a debt which they are able to pay." *Id.* at 45. In the American context, the prohibition of imprisonment for debt does not include jailing for the failure to pay child support as civil contempt. *See e.g., Miemyjski v. Niemyjski,* 98 N.M. 176, 646 P.2d 1240 (N.M. 1982); *Moss v. Superior Court,* 17 Cal.4th 396, 950 P.2d 59 (Cal. 1998).

An evidentiary hearing or transcript of proceedings is not needed to render a decision in this case. It is clear from the Shiprock District Court's July 28, 1999 "temporary commitment" order, which was actually an indefinite civil contempt order, that Pelt was jailed solely for her failure to pay a civil judgment for a contract debt. We hold that section 3 of the Navajo Nation Bill of Rights prohibited her incarceration for failure to pay the judgment on a contract as an unreasonable deprivation of liberty.

The writ is hereby made permanent.

5 We note that the United States Bill of Rights does not guarantee life, liberty, and the pursuit of happiness as basic civil rights, although our law considers those to be the "fundamental individual rights of all human beings."
6 The Constitutional Court of South Africa follows the old judicial custom of each justice rendering a separate written opinion.